**BRIEF FOR APPELLANT, JUNIUS J. JOYNER, III**

---

**UNITED STATES COURT OF APPEALS FOR
THE DISTRICT OF COLUMBIA CIRCUIT**

---

**23-7142**

---

**JUNIUS J. JOYNER, III,**

**Appellant,**

**v.**

**MORRISON & FOERSTER EL AL.,**

**Appellee.**

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

Junius J. Joyner, III
Appellant, *pro se*
8020 Voyager Parkway
Colorado Springs, CO 80920
Telephone:  424.352.6193
Email:  juniusj3@yahoo.com

February 6, 2024

# TABLE OF CONTENTS

I.    NATURE OF CASE ...................................................................... 1

II.   PARTIES .................................................................................... 1

III.  JURISDICTION .......................................................................... 2

IV.   STATEMENT OF FACTS ............................................................ 2

V.    STATEMENT OF ISSUES .......................................................... 3

VI.   SUMMARY OF THE ARGUMENT ............................................. 4

VII.  ARGUMENT .............................................................................. 4

    A.   THE DISTRICT COURT FAILED TO APPLY FACTS AS PLED TO
        CONTROLLING CASE LAW; FAILED TO APPLY THE CORRECT
        CONTROLLING CASE LAW TO ISSUES RAISED; AND MISINTERPRETED
        THE CORRECT CONTROLLING LAW TO ISSUES RAISED WHEN IT
        DETERMINED APPELLANT FAILED TO STATE A CLAIM FOR DISPARATE
        TREATMENT UNDER TITLE 42 U.S.C. §1981 ..................................... 4

        1.   STANDARD OF REVIEW .................................................. 4

        2.   ARGUMENT – MOFO ...................................................... 5

        3.   ARGUMENT – HIRE COUNSEL ........................................ 8

    B.   THE DISTRICT COURT FAILED TO APPLY FACTS AS PLED TO
        CONTROLLING CASE LAW; FAILED TO APPLY THE CORRECT
        CONTROLLING CASE LAW TO ISSUES RAISED; AND MISINTERPRETED
        THE CORRECT CONTROLLING LAW TO ISSUES RAISED WHEN IT
        DETERMINED APPELLANT FAILED TO STATE A HOSTILE WORK
        ENVIRONMENT CLAIM UNDER TITLE 42 U.S.C. §1981. ................... 12

        1.   ARGUMENT – MOFO ...................................................... 12

        2.   ARGUMENT – HIRE COUNSEL ........................................ 21

    C.   THE DISTRICT COURT FAILED TO APPLY FACTS AS PLED TO
        CONTROLLING CASE LAW; FAILED TO APPLY THE CORRECT
        CONTROLLING CASE LAW TO ISSUES RAISED; AND MISINTERPRETED
        THE CORRECT CONTROLLING LAW TO ISSUES RAISED WHEN IT
        DETERMINED APPELLANT FAILED TO STATE A CLAIM FOR WRONGFUL
        DISCHARGE AGAINST PUBLIC POLICY. ........................................ 22

    D.   THE DISTRICT COURT MISAPPLIED THE CORRECT CONTROLLING LAW
        AND ABUSED ITS DISCRETION WHEN IT DISMISSED APPELLANT'S
        CLAIM WITH PREJUDICE .......................................................... 29

VIII. CONCLUSION .......................................................................... 30

# TABLE OF AUTHORITIES

## **Cases**

*Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006) ........................................................ 19

*Black v. Guzman*, No. 22-cv-1873 (BAH) 2023 WL 3055427 (D.D.C. Apr. 24, 2023) ...................................................................................................................................... 7

*Bonanno v. Thomas,* 309 F.2d 320 (9th Cir.1962) .................................................... 29

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) ..................................... 14

*Curry v. District of Columbia*, 195 F.3d 654 (D.C. Cir. 1999) ........................... 19, 20

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................................... 11

*Easaw v. Newport*, 253 F. Supp. 3d 22 (D.D.C. 2017) ............................................... 7

*Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) ......................................... 14, 15

*Firestone v. Firestone*, 76 F.3d 1205 (1996), ..................................................... 28, 29

*Goode v. Billington*, 932 F. Supp. 2d 75 (D.D.C. 2013) ...................................... 17, 21

*Harris v. Forklift Systems, Inc.* 510 U.S. 17 (1993) .................................................. 15

*Harris v. Mayorkas*, No. 21-cv-1083 (GMH), 2022 WL 3452316 ........................... 11

*Holbrook v. Reno*, 196 F.3d 255 (D.C. Cir. 1999) ...................................................... 5

*Jarrell v. United States Postal Serv.,*753 F.2d 1088 (D.C.Cir.1985) ........................ 29

*Kone v. District of Columbia*, 808 F. Supp. 2d 80 (2011) .......................................... 25

*Leyden* v. *Am. Accreditation Healthcare Comm 'n,* 83 F. Supp. 3d 241 (D.D.C. 2015) ...................................................................................................................................... 26

*McIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223  (D.D.C. 2005) ............................................................................................................................ 23

*Momenian v. Davidson*, 878 F.3d 381 (D.C. Cir. 2011) .............................................. 4

*Nurriddin v. Bolden*, 674 F. Supp. 2d 64 (D.D.C. 2009)........................................... 17

*Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697 (7th Cir. 2011).......... 23, 24

*Omwenga v. Nations Found*, No. 15-cv-786 (TSC), 2020 WL 5798428 (D.D.C. Sept. 29, 2020) ........................................................................................................... 23, 26

*Redmon v. YMCA of Metro. Wash.*, 417 F. Supp. 3d 99 (D.D.C. 2019) ...................... 5

*Todd v. Exxon Corp.,* 275 F.3d 191 (2d Cir. 2001) ............................................. 23, 24

*Townsend v. US.,* 236 F. Supp 3d 280 (D.D.C 2017) .................................... 8

*United States v. Estelan*, 156 F. Appx 185 (11th Cir. 2005) ......................... 27

*Vance v. Ball State Univ.*, 570 U.S. 421 (2013) ........................................ 13

*Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873  (D.C.1998) . 25, 26,
........................................................................................... 27

**Statutes**

Title 15 U.S.C.§ 1 ........................................................................ 24

Title 15 U.S.C. §18a .......................................................... 23, 27, 28

Title 15 U.S.C. § 41 .................................................................... 28

Title 28 U.S.C. § 1291 ................................................................... 2

Title 42 U.S.C. §1981 ............................................... 1, 3, 4, 8, 12, 14

Title 42 U.S.C. §2000(e)-2(a)(1) ....................................................... 1

Code of the District of Columbia § 28-4501 .................................... 23, 24

Code of the District of Columbia § 28-4502 .................................... 23, 24

Code of the District of Columbia § 28-4503 ........................................ 23

Code of the District of Columbia § 28-4506 ........................................ 23

Code of the District of Columbia § 28-4508 ........................................ 23

**Rules**

Fed. R. Civ. P. Rule 12 (b)(6) ......................................................... 4

**Administrative Proceedings**

*United States of America v. Bosley, Inc. et al*., Docket No. C-4404 (FTC May 2013)
........................................................................................... 28

*United States of America v. Computer Associates Intl. Inc., et al*., Civil Action No. 01
CV 02062 (D.D.C. April 2002) ...................................................... 28

*United States of America v. Gemstar-TV Guide Intl., Inc.*, et al., Civil Action No. 03
CV 000198 (D.D.C. March 2003) ................................................... 28

*United States of America v. Insilco Corp*., Docket No. C-3783 (FTC Jan. 1998) ..... 28

# I.    NATURE OF CASE

1.  This is an appeal from the United States District Court for the District of Columbia's ("District Court") September 27, 2023 final order granting Appellees' Motion to Dismiss Appellant's complaint against Appellees for racial and sex discrimination under Title VII of the Civil Rights Act of 1964; maintaining a hostile work environment under Title 42 U.S.C. §1981; Title 42 U.S.C. §2000(e)-2(a)(1); wrongful termination against public policy; and dismissing Appellant's complaint with prejudice.

# II.    PARTIES

2.  Appellant, Junius J. Joyner, III, *pro se*, is an African-American male citizen of the United States of America and was employed in Washington, D.C. by the Appellees from July 1, 2019 until his unlawful discharge on December 12, 2019.

3.  Appellee, Morrison & Foerster LLP ("MoFo"), formed as a limited-liability corporation, is a global law firm headquartered in San Francisco, California providing legal advice to clients across multiple practice areas that includes antitrust law; it maintained a place of business located at 2000 Pennsylvania Avenue, N.W. Washington D.C. 20006 at the time this claim arose.

4.  Appellee, Mestel & Company New York LLC, also known as Hire Counsel ("Hire Counsel"), formed as a limited-liability corporation, is headquartered in

1

New York, New York and provides professional staffing services to law firms throughout the country; it maintained a place of business at 1990 K Street N.W., Suite 400, Washington D.C. 20006 at the time this claim arose.

5.  Appellee, Evan M. Harris, MoFo Associate, a private party, at the time this claim arose was employed by and worked at MoFo's Washington D.C. office.

6.  Appellee, Natalie A. Fleming Nolen, MoFo Partner, a private party, at the time this claim arose was employed by and worked at MoFo's Washington D.C. office.

7.  Appellee, Patti Ayala, Vice President of Human Resources & Administration, a private party, at the time this claim arose was employed by and worked for Hire Counsel (Appellees, Evan M. Harris, Natalie A. Fleming Nolen, and Patti Ayala collectively, "Individual Appellees").

## III.   JURISDICTION

8.  Pursuant to Title 28 U.S.C. § 1291 this Court exercises jurisdiction over the District Court's September 27, 2023 final decision.

## IV.   STATEMENT OF FACTS

9.  On May 29, 2000, Appellant filed his original complaint with District Court against certain Appellees. ECF No. 1.   The complaint was amended to add additional Cause of Actions and parties. ECF Nos. 9. 12, 31. The matter under appeal alleges Appellees MoFo & Hire Counsel, and Individual Appellees violated Appellant's rights under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000(e)-2(a)(1), and 42 U.S.C. §1981. Additionally, Appellant alleges Appellee MoFo wrongfully discharged him in violation of public policy. ECF No. 31.

10. On March 10, 2021, Appellees filed Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint For Failure To State A Claim ("MTD"). ECF No. 34.

11. On April 5, 2021, Appellant filed Redacted Plaintiff's Response To Defendant's Motion To Dismiss Plaintiff's Third Amended Complaint ("OPP_MTD"). ECF No. 39.

12. On September 27, 2023, the District Court issued the opinion currently under appeal with the Court. ECF No. 56.

## V.    STATEMENT OF ISSUES

17.    Did the District Court fail to apply facts as pled to controlling case law; fail to apply the correct controlling case law to issues raised; and or misinterpret the correct controlling law to issues raised when it determined Appellant failed to state claims for disparate treatment, hostile work environment, and wrongful discharge against public policy?  Finally, did the District Court misinterpret the correct controlling law and abuse its discretion when it dismissed Appellant's Third Amended Complaint ("TAC") with prejudice?

# VI.   SUMMARY OF THE ARGUMENT

18.   Yes, the District Court failed to apply facts as pled to controlling case law; failed to apply the correct controlling case law to issues raised; and misinterpreted the correct controlling law to issues raised when it determined Appellant failed to state claims for disparate treatment, hostile work environment, and wrongful discharge against public policy.  Finally, the District Court misinterpreted the correct controlling law and abused its discretion when it dismissed Appellant's TAC with prejudice.

# VII.  ARGUMENT

> *A.   THE DISTRICT COURT FAILED TO APPLY FACTS AS PLED TO CONTROLLING CASE LAW; FAILED TO APPLY THE CORRECT CONTROLLING CASE LAW TO ISSUES RAISED; AND MISINTERPRETED THE CORRECT CONTROLLING LAW TO ISSUES RAISED WHEN IT DETERMINED APPELLANT FAILED TO STATE A CLAIM FOR DISPARATE TREATMENT UNDER TITLE 42 U.S.C. §1981.*

### 1.   STANDARD OF REVIEW

19.   A Fed. R. Civ. P. Rule 12 (b)(6) motion for failure to state a claim for which relief can be granted is reviewed *de novo*, "accepting a plaintiff's factual allegations as true and drawing all reasonable inferences in a plaintiff's favor".  See, *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2011).

### 2.    ARGUMENT – MOFO

20.    The Court concedes that Appellant's allegations that MoFo failing to assign him to a workstream was in fact an adverse employment action; however, the Court opines Appellant "failed to plausibly allege that MoFo delayed assigning him to a workstream because of his race.".  ECF No. 56 at 11 ¶1.  Precisely, the Court parses Appellant's allegations to find that he did not provide sufficient facts to support an argument that non-protected class members, Caucasian attorneys, immediately assigned to workstreams were similarly situated with Appellant.  ECF No. 56  at 11-12.

21.    The Court cites *Redmon v. YMCA of Metro. Wash.*, 417 F. Supp. 3d 99, 102, 103 (D.D.C. 2019) , quoting *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999), language, "all of the relevant aspects of [his] employment situation were nearly identical to those of the [comparator].", to find Appellant failed to meet his burden.

22.    The facts in Appellant's case are readily distinguishable from *Redmon*.  The plaintiff in *Redmon* failed to allege a similarly situated argument because as a threshold matter plaintiff was a supervisor and his coworkers, or comparators, were all subordinates.

23.    In contrast, Appellant's TAC states:

> During Plaintiff's employment two new attorneys (Co-Worker 1 and 2) were added to the project and both were immediately assigned to workstreams whereas Plaintiff had to wait more than two-and-a-half months before being assigned to a team. Both attorneys were Caucasian.

5

> Additionally, on information and belief, the most recent attorney (Co-Worker 3) hired prior to Plaintiff being hired was also immediately assigned to a workstream. This attorney was also Caucasian. Moreover, on information and belief, in contrast to the Plaintiff, all attorneys that were non-protected class members hired through Hire Counsel were immediately assigned to workstreams.
>
> ECF No. 31 ¶ 22 fn. 2.

24.     There is no neon light flashing in Appellant allegations suggesting comparators are not similarly situated analogous to *Redmon*.  Rather the Court raises issue with Appellant omitting whether the alleged comparators were hired by the same staffing agency, antitrust experience was similar, or whether these attorneys were on his team.  The Court's conclusion omits factual pleading in his TAC and inferences that can be drawn from it.  ECF No. 56 at 11 ¶2.

25.     First,  Appellant does allege that at least some comparators were hired by the same staffing firm.[1]  Second, by virtue of Hire Counsel, a professional staffing firm, hiring and placing specific attorneys on to the Sprint-T-Mobile merger, an inference must be made these attorneys have similar antitrust experience, at the very minimum a requisite knowledge to perform the required task.  Any requirement at the initial pleading stage to know more about co-workers or

---

[1] Point of fact, Appellant's allegations as to attorneys being added to the "project", not multiple projects, were intended to posit all contract attorneys brought on to advise in the integration between Sprint and T-Mobile were placed by one agency, Hire Counsel.  Furthermore, all contract attorneys placed by Hire Counsel went through a similar recruiting process to insure each individual possessed the requested antitrust experience.  Appellant Unsealed Appendix pp. 1-7.

comparators is too a great of a burden and contrary to a prima facie pleading not being onerous.  See,  *Easaw v. Newport*, 253 F. Supp. 3d 22, 26 (D.D.C. 2017) Notwithstanding a requisite antitrust knowledge all attorney placed on the project must have, concerns Appellant raised regarding antitrust violations strongly suggest his antitrust knowledge was at least equal if not superior to that of his comparators.  Finally, the Court noting that Appellant did not state whether or not comparators were on his team misses the entire disparate treatment issue and an understanding of the relationship between MoFo and Hire Counsel and MoFo's work environment.

26.     In sum, Hire Counsel placed qualified attorneys with MoFo and MoFo assigned noted Caucasian attorneys to Sprint-T-Mobile antitrust workstreams yet Appellant, who was similarly situated, meaning hired by Hire Counsel and therefore qualified, was not assigned to any workstream and unlike comparators floated from workstream to workstream until more than two months after his initial hire.

27.     Accordingly,  these facts are easily distinguishable from *Redmon* and the facts of *Black v. Guzman*, No. 22-cv-1873 (BAH), 2023 WL 3055427 (D.D.C. Apr. 24, 2023).  In *Redmon* the plaintiff was a supervisory lifeguard, his comparators were not.  *Redmon*, 417 F. at 103.  In *Black* plaintiff's position was an Underwriting Marketing Specialist and her comparator was a Management Analyst, completely different title, and duties.   See, *Black*, WL 3055427 at 7.

28.    Appellant's make or break argument is that he and all attorneys placed by Hire Counsel on the Sprint-T-Mobile merger were similar situated at the point in time that workstream placement occurred, which was immediate for all Caucasian contract attorneys added to the Sprint-T-Mobile merger.  A similar analogy would be if the YMCA in *Redmon* used a staffing firm to qualify potential lifeguards and upon placement all non-protected class persons, Caucasian lifeguards, were assigned to a particular pool immediately upon placement yet an African-American protected class member did not receive a specific pool assignment and floated from pool to pool each day.

29.    Appellant has pled sufficient facts to meet the standard required for a  prima facie case of discrimination under §1981 and respectfully moves the Court to overturn the District Court's finding.

> 3. ARGUMENT – HIRE COUNSEL

30.    The Court concedes "post-*Chambers*" Appellant's allegations that Hire Counsel's failure to authorize him to work remotely was in fact an adverse employment action; however, the Court opines Appellant "does not allege any facts from which the Court might plausibly infer that Hire Counsel was motivated by discriminatory intent.".  ECF No. 56 at 12 ¶ 2.

31.    The Court finds Appellant's assertion that Co-Worker 1 being authorized to work remotely when he was denied remote work unpersuasive to infer

discrimination.[2]   The Court states the fundamental problem with Appellant's

argument is that he does not allege that Hire Counsel employed Co-Worker 1 or

authorized her to work remotely.[3]  See, ECF No. 56 at 12 ¶ 3.  Appellant takes

issue with the Court's restatement of Appellant's pleading and the inferences

thereby drawn.

32.    In Appellant's pleading he states:

> Plaintiff, in an effort not to inadvertently violate a court order, requested and received approval from MoFo to work from home until the trial date, approximately three days working remote. However, and although Co- Worker 1 had received previous authorization to work remotely for a longer period of time (two weeks) **(PLA EXHIBIT 4),** Plaintiffs request was denied by Hire Counsel.  Moreover, although Plaintiff's request had already been approved by MoFo, and Hire Counsel had authorized similar or longer remote work for Caucasian or non-protected class members, Plaintiff received threatening emails of termination from Mrs. Ayala. **(PLA EXHIBIT 5)**
>                                              ECF No. 31 ¶ 57-58

---

[2] The District Court's finding is in contrast with *Townsend v. US.,* 236 F. Supp 3d 280, 309 (D.D.C 2017) ("Further, an inference of discrimination may be drawn where an "employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances."") . Strikingly, the District Court is silent on Appellant's allegation that Hire Counsel's failure to investigate allegations reported regarding Co-Worker 1's conduct and the conduct of co-workers in the conference room, given its thorough investigation of Co-Worker 1's allegation, amounted to discrimination based on Appellant's race and sex.  ECF No. 31 TAC ¶ 53.

[3] The Court also concludes Appellant has not alleged facts sufficient to show Co-Worker 1 and Appellant were similarly situated.   Appellant addresses this *infra*.

33.    Appellant's pleading does not explicitly state that Hire Counsel employed Co-Worker 1 but Appellant's statement, "However, and although Co-Worker 1 had received previous authorization to work remotely for a longer period of time (two weeks) **(PLA EXHIBIT 4),** Plaintiffs request was denied by Hire Counsel." sufficiently correlates a connection between Hire Counsel's authorization of remote work for Co-Worker 1 and Hire Counsel's denial of remote work for Appellant. An inference can be made that Appellant's language "*although* Co-Worker 1 had received previous authorization to work remotely" it follows Hire Counsel must have some relationship to Co-Worker 1 otherwise Appellant would not have qualified his denial of remote work with Hire Counsel. (emphasis added)

34.    The Court's rigid  requirement for the Appellant to have explicitly stated Co-Worker 1 was employed by Hire Counsel or that Hire Counsel explicitly authorized Co-Worker 1 to work remotely is too high a standard when this can be inferred from Appellants pleading.   Arguendo, this high watermark is easily remedied by substituting "Co-Worker 1", who is Caucasian a non-protected class member, with "Caucasian or non-protected class members" into the pleading.  Surely the omission of a pronoun cannot prohibit Appellant from bringing an otherwise actionable matter forward.  Moreover, Appellant's TAC shows a relationship

10

between employee identified as Co-Worker 1 and an employment relationship between Co-Worker 1 and Hire Counsel.[4]  ECF No. 31 PLA_Exhibit 4.

35.    Given these facts, Appellant's pleading differs from the plaintiff in *Harris v. Mayorkas*, No. 21-cv-1083 (GMH), 2022 WL 3452316 wherein the Court found the plaintiff had not met her burden to plead defendant's actions were motivated by racial animus.  In *Harris* the plaintiff mistakenly relied on the generic statement

---

[4]Appellant, in the course of discovery in the Superior Court of the District of Columbia ("Superior Court") matter asserted in TAC, did receive from Hire Counsel an email between Co-Worker 1 and Hire Counsel that explicitly shows Hire Counsel employed Co-Worker 1 and Patti Ayala, Vice President of Human Resource and Administration, had the authority to fire Co-Worker 1 and did so. Appellant Sealed Appendix pp. 1-2.  Appellant's ability to meet the Court's high pleading standard through a tangential discovery process only highlights the need not to require Appellant to thread the proverbial camel through the eye of the needle at the initial pleading stage.  Moreover, this email clearly shows that a set of facts support Appellant's claim and therefore his claim should not be dismissed. See, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("[A] complaint should not be dismissed ... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

"[s]imilarly situated co-workers outside of the [her] race were not treated in the manner in which [she] was" to meet the third prong of a disparate treatment claim. *Harris,* WL 3452316 at 6.  The Court found this to be legal conclusion and not enough to meet her burden;  the Court also found she did not "generally describe any comparator employees … or how they were treated differently than Plaintiff. *Id.*  As discussed *supra*, Appellant's pleading does more than just state a legal conclusion and Appellant offers a comparable employee in Co-Worker 1.

36.    Appellant has pled sufficient facts to meet the standard required for a prima facie case for a §1981 disparate treatment claim and respectfully moves the Court to overturn the District Court's finding.

> B.  THE DISTRICT COURT FAILED TO APPLY FACTS AS PLED  TO CONTROLLING CASE LAW; FAILED TO APPLY THE CORRECT CONTROLLING CASE LAW TO ISSUES RAISED; AND MISINTERPRETED THE CORRECT CONTROLLING LAW TO ISSUES RAISED  WHEN IT DETERMINED APPELLANT FAILED TO STATE A HOSTILE WORK ENVIRONMENT CLAIM UNDER TITLE 42 U.S.C. §1981.

1. ARGUMENT – MOFO

37.    The District Court concludes Appellant failed to state a hostile work environment claim against MoFo because he (a) did not adequately impute harassment by co-workers to the firm, and (b) whether taken individually or collectively, the events alleged were not sufficiently severe or pervasive to sustain a hostile work-environment claim.  Appellant disagrees.

12

### A. MoFo Liability

#### 1. Supervisor Conduct

38.    The District Court insinuates Defendant Harris' title of "Associate" precludes him from being a "supervisor" under *Vance v. Ball State Univ.*, 570 U.S. 421, 432` (2013).  This conclusion is wrong.  ECF No. 56 at 17 ¶ 1. *Vance* makes clear that supervisory status can be determined either before litigation begins or after the discovery is completed.  ("In a great many cases, it will be known even before litigation is commenced whether an alleged harasser was a supervisor, and in others, the alleged harasser's status will become clear to both sides after discovery.) *Vance*, 570 U.S. at 441.

39.    In this instance, different from the facts in *Vance*, Appellant did allege Defendant Harris was empowered to take tangible employment action against him and, without the aid of discovery,  provided plausible evidence of this fact.[5]  ECF No. 31 fn. 22

40.    Moreover, the District Court's suggestion that the evidence provided only purports to show Defendant Ayala asked Defendant Harris to communicate the firing completely misses the mark.  For one the District Court inserts itself as a trier of fact, and two the District Court completely ignores the inferences that can be

---

[5] *Vance* differs greatly from the facts in this case because the parties in *Vance* agreed "Davis did not have the power to hire, fire, demote, promote, transfer, or discipline" the victim. *Vance*, 570 U.S. at 425.

13

drawn from, "Do you agree we should just do it the standard way and notify him after hours or are you up for an in-person firing?". ECF No. 31 PLA_Exhibit 6. Based on this statement alone a trier of fact could conclude firing is old hat to Defendant Harris and if Defendant Nolan is not up for an in-person firing Defendant Harris will do it.

41.    The District Court confuses having the authority to take some tangible action with the necessity to have taken tangible action to impute vicarious liability ("As noted, the *Ellerth/Faragher* framework sets out two circumstances in which an employer may be vicariously liable for a supervisor's harassment. The first situation …The second situation (which results in vicarious liability if the employer cannot make out the requisite affirmative defense) is present when no such tangible action is taken.). *Vance,* 570 U.S. at 440.

42.    Finally, the Court's use of Defendant Harris' title as an "Associate" to relegate him to something other than a supervisor for the purposes of § 1981 supplants MoFo's unknown hierarchy.   Defendant Harris may well have been a "Senior Associate" at the firm or at the time been on a partnership track soon to be completed or MoFo may simply have empowered Associates with the power to fire.   Again, these questions are answered through discovery not at the pleading stage.   Accordingly, the District Court's conclusion fails to properly state the facts as pled and fails to recognize vicarious liability.

2. Severe or Pervasive Conduct

43.    Dismissing the District Court's finding Appellant did not "allege a factual predicate for vicarious liability", what remains is whether the Court was also incorrect concluding Appellant's allegations "do not sufficiently demonstrate a significant level of offensiveness" to state a hostile-work-environment claim.  ECF No.  56 at 19 ¶ 2. To the Court's finding, whether Appellant pled a prima facie § 1981 hostile work environment claim hinges on what constitutes severe or pervasive conduct.

44.    The U.S. Supreme Court in *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) stated:

> "[I]n determining whether a work environment is sufficiently hostile to be actionable, a court should consider: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or merely offensive; and (4) whether the conduct unreasonably interferes with the employee's performance." *Id.*

45.    Further insight into what or what is not serve or pervasive conduct is also found in *Harris v. Forklift Systems, Inc.* 510 U.S. 17 (1993) language:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation. But Title VII comes into play before the harassing conduct leads to a nervous breakdown. A

15

discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Id.*

46.    As pled, with respect to MoFo, in a span of five months, from pillar to post of Appellant's employment he endured: i) his direct supervisor intimating he was "low class" or "lower class" than the white majority, ii) not being assigned to a workstream like white counter-parts, iii) being isolated in a room with white men who lauded college students' brazenness to stand in defiance in front of Emmett Till's gravesite with rifles but acknowledged their stupidity for posting on social media, and who took pleasure in describing Confederate Civil War Reenactments and calling him "Boy", iv)  his direct supervisor telling him "We don't want you down there!" making reference to Appellant extricating himself from the room of white men, v) being harassed by a white female who physically assaulted him, vi) being marginalized and segregated and cast as some type of predator by his direct supervisor who overwhelmingly sided with white female who was found to have extreme racial animus towards Appellant, vii) being screamed at by a white co-worker he was only there because of Affirmative Action, and viii) on his last day of employment being surrounded by security like a criminal because MoFo and Hire Counsel failed to inform him in the customary manner he had been fired thereby humiliating him one final time.

16

47.    Only in a purely sanitized ivory tower world devoid of any relationship to true life could someone be expected to endure these events and remain immune to diminished job performance or have any desire to continue employment let alone have career aspirations in this environment.   Contrast these facts with the District Court citing of *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) and *Goode v. Billington*, 932 F. Supp. 2d 75, 89 (D.D.C. 2013) to conclude Appellant's conduct alleged does not rise to the level of severe or pervasive conduct.

48.    In *Nurriddin* the plaintiff alleged work place difficulties like being passed over for promotions, lower performance ratings, being refused a coveted office location, and being denied travel to conferences.   These incidents occurred over a four-year period time.  Only once incident, being told he went to too many minority conferences, could tangentially directly be tied to his race.   The Court found these events were merely isolated incidents of less favorable treatment not racial animus, and the four-year time period in which they occurred suggested a lack of perverseness. See, *Nurriddin*, 674 F. Supp. 2d 64 at 94.  The facts in *Nurriddin* could not be further from what Appellant alleges.   To begin with, only Appellant's allegation of not being assigned to a workstream could remotely be considered less favorable treatment, Appellant has already put forth reasons why this is not the case.   All other events described are highly offensive and directly tied to Appellant's race.  Moreover, the five month timeframe these numerous events occurred demonstrate a pervasiveness not present in *Nurriddin*.

49.   The District Court's reliance on *Goode* is equally misplaced.   In *Goode* a Jewish plaintiff brought a hostile environment claim against his former employer, Librarian of Congress, alleging harassment because of his protected Jewish religious affiliation.  Relevant to his hostile work environment claim he alleged a picture of the Old City of Jerusalem in his office was stolen, supervisor harassment under false pretenses, and the day before termination a sign was posted on his door reading, "Good Riddance Jew Boy".  *Goode v. Billington*, 932 F. Supp. 2d at 88.

50.   In denying his claim the court found i) the plaintiff had admitted at the time the picture was taken he did not subjectively believe it was taken because of his religion, ii) there was no linkage between supervisor "unreasonable hostility" and his protected status because he proffered no evidence that before the sign was posted supervisors knew he was Jewish, and iii) a reasonable jury could not find the sign posted on the door was severe or pervasive. *Id*., at 88-89. These facts are miles away from what Appellant alleged.   A fact pattern in line with Appellant's arguments would allege the plaintiff on his first day of employment prominently displayed a Star of David necklace around his neck and was confined to a room with German co-workers who brazenly discussed reenactments of Germany's invasion of Poland in 1939, mocked suspended college students ineptitude for posing in front of Anne Frank's gravestone with rifles, and called plaintiff "Untermenschen" or some other offensive derogatory term the Nazi's used to

18

degrade Jewish people.[6]   Given these circumstances it is unconscionable to consider the *Goode* court would have reached the conclusion plaintiff did not allege a prima facie hostile work environment claim.     Accordingly, this Court should find the District Court erred finding Appellant failed to state a hostile work environment claim.

   3. Co-Worker Conduct (MoFo Knew or Should Have Known)

 51.   Once a plaintiff has established a hostile work environment exists, he or she must also show that "[the] employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action."  *Goode*, 932 F. Supp. 2d at 87.  The District Court citing *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999) posits Appellant failed to meet this element. ECF No. 56. At 19.  Appellant disagrees.

 52.   The Appellant has alleged two specific instances giving rise to a plausible inference that MoFo knew or should have known of the harassment, namely that an African-American secretary of the firm asked how he can stand to be in that room,

---

[6] The term "Untermenschen" used by Hitler's Third Reich to depict Jewish people as sub-human is analogous to the Ku Klux Klan or other white supremacist organizations use of the term "Boy" before, during, and after the Civil War to depict black males as less then men.   The Appellant's allegation that a white male co-worker called Appellant "Boy", given the speaker, context (environment), and historical usage, is probative of discriminatory animus.  See,  *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006).

and comment from Appellant's supervisor, "We don't want you down there!".[7]

ECF No. 31 at 8.   Arguably a reasonable jury could find that the secretary's

comments implied that it was known at the firm that the white men in this room

demonstrated racial animus towards African-Americans.  Moreover, the direct

comments by Defendant Harris strongly suggest he was in league with these men

and – especially given his office location being closer than the secretary – was

aware of the racial harassment.   The facts in *Curry* are polar opposite of

Appellant's allegations because in *Curry* the district found no one knew of the

harassment or of similar problems before plaintiff reported them.    *Curry,* 195 F.3d

at 661.

 53.   Finally, Appellant maintains MoFo's remedial or corrective actions to

complaints of harassment by Co-Worker 1, as directed by supervisor Defendant

Nolen (MoFo Partner), to remove another female employee from his office space

and order him not to be anywhere near the complaining white female only

---

[7] In fact, MoFo and Hire Counsel both had direct knowledge of the racial animus Appellant alleges in para 46 *supra*.   See, Appellant Sealed Appendix pp. 12-21. (showing both employers were aware of events regarding Emmit Till article)(pp. 4-9 are photographs also forwarded to Hire Counsel showing Co-Worker 1's political charts created at MoFo regarding how Democrats could take back the White House in 2020, ultimately leading to her being fired,  not because of conduct alleged by Appellant that were not investigated.).

compounded the harassment and discrimination.  Accordingly, MoFo failed to take appropriate corrective actions.[8]

### 2. ARGUMENT – HIRE COUNSEL

54.    The District Court concludes Appellant fails to plausibly allege that Hire Counsel employed the co-workers he reported rather than MoFo or some other attorney placement agency and therefore did not plead anything to support an inference that Hire Counsel had any authority to control those conditions.   ECF No. 56 at 20. Additionally, relying on its previous decision, the District Court found Appellant had not shown any discriminatory nexus between his race and Hire Counsel's decision to reject his request for remote work.[9]  *Id*.  Appellant again disagrees.

### A. Hire Counsel Liability

---

[8] Transcripts from both Superior Court trials demonstrate Co-Worker 1's extreme racial animus towards Appellant and raise a strong inference that MoFo's remedial actions due to Co-Worker 1's baseless allegations were motivated by Co-Worker's 1 deplorable depiction of Appellant as an animal who could not resist white women.  ECF No. 31, ¶ 32 fn. 6; PLA_EXHIBIT 2, PLA_EXHIBIT 4; Appellant Sealed Supplemental Appendix pp. 1-177.

[9] *Goode* prohibits Appellant from arguing a hostile work environment claim due to Hire Counsel failing to inform him of his termination because the timing prevents a reasonable jury from finding the conduct was severe or pervasive.  *Goode*, 932 F. Supp. 2d at 90 ([N]o reasonable jury could conclude … the sign posted in the Plaintiff's office "had the effect of unreasonably interfering with the plaintiff's work performance ….".).  However, although this conduct did not alter Appellant's employment it did, as argued *supra*, show disparate treatment.  ECF No. 31 ¶ 62 PLA_EXHIBIT 3.

55.   Appellant's arguments put forth in para 25, 26, and 28 are equally applicable

here.  As argued, Appellant does allege Hire Counsel hired all co-workers who

discriminated against him.  Moreover, why would Appellant inform Defendant

Ayala of this conduct if Hire Counsel had no control over the alleged actors?  The

District Court again transforms the simple plain statement to a rigid pleading

standard.  Alternatively, to the extent this Court requires Appellant to have

explicitly stated Hire Counsel hired all co-workers complained of, this is easily

remedied by an amended pleading.   Similarly, Appellant previously addressed the

District Court's second concern that no discriminatory nexus between his race and

Hire Counsel's decision to reject his request for remote work existed.[10]  See, para

31-34.  The District Court does not question Defendant Ayala's supervisor status

therefore Appellant has imputed liability of a hostile work environment directly to

Hire Counsel.[11]

C. *THE DISTRICT COURT FAILED TO APPLY FACTS AS PLED  TO CONTROLLING CASE*
   *LAW; FAILED TO APPLY THE CORRECT CONTROLLING CASE LAW TO ISSUES*
   *RAISED;  AND MISINTERPRETED THE CORRECT CONTROLLING LAW TO ISSUES*

---

[10] Similar to argument made in para 31 *supra*, the District Court is silent on
Appellant's allegation that Hire Counsel's failure to investigate allegations reported
regarding Co-Worker 1's conduct and the conduct of co-workers in the conference
room, given its thorough investigation of Co-Worker 1's allegation, amounted to
the creation or condoning of a hostile work environment.  ECF No. 31 ¶ 127.

[11] Threatening email from Defendant Ayala clearly shows supervisory authority.
ECF No. 31 ¶ 58 PLA_EXHIBIT 5.

22

*RAISED WHEN IT DETERMINED APPELLANT FAILED TO STATE A CLAIM FOR*

*WRONGFUL DISCHARGE AGAINST PUBLIC POLICY.*

56.    The District Court concludes Appellant's pleading fails to identify any law

that plausibly supports a wrongful discharge in violation of public policy claim.

ECF. No. 56 at 21.  To the point, the District Court found that Appellant did not

show a "close fit" between any official public policy and the Appellant's allegation

MoFo disclosed competitively sensitive information during the merger of Sprint

and T-Mobile.   ECF. No. 56 at 23.   Appellant disagrees.[12]

57.    In Appellant's TAC he cites Hart-Scott-Rodino Antitrust Improvements

Act of 1976 HSR, 15 U.S.C. §18a ("HSR"), Code of the District of Columbia§§

28-450l(a) &(b), 28-4502, 28-4503, 28-4506, 28-4508, and the District of

Columbia Bar Rules of Professional Responsibility as official public policies that

clearly prohibited sharing of competitive sensitive information before the merger

closed.  ECF. No. 56 at 21-26.  Central to the issue before this Court is whether the

exchange of competitively sensitive information prior to the close of the merger

can plausibly be considered a conspiracy in the restraint of trade.  Opinions in

---

[12] Discussed infra, Appellant asserts he identified laws or regulations that support a wrongful discharge in violation of public policy claim. That withstanding, a plaintiff is not required to cite a specific statute supporting the public policy violated.  See, *Omwenga v. Nations Found*, No. 15-cv-786 (TSC), 2020 WL 5798428, at *5 (D.D.C. Sept. 29, 2020) citing *McIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223, 228 (D.D.C. 2005) (explaining a plaintiff need not cite a specific statute that supports the public policy allegedly violated in a wrongful discharge case).

23

*Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697 (7th Cir. 2011) & *Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir. 2001) (exchange of information is not *per se* violation but can be found illegal under a rule of reason analysis) answers this question in the affirmative.

58.   The Code of the District of Columbia § 28-4502 states: "Every contract, combination in the form of a trust or otherwise, or ***conspiracy in the restraint of trade or commerce*** all or any part of which is within the District of Columbia ***is declared to be illegal***.".  (emphasis added)  The Seventh Circuit in *Omnicare* addressed the specific instance of competitively sensitive information being shared between merging parties prior to merger close and found that the sharing of "pricing" information unambiguously fell within Section 1 of the Sherman Act's restraint of trade provision.[13] *Omnicare*, 629 F.3d at 705.   However, unlike the facts presented in *Todd* the Seventh Circuit found the information exchanged generalized and was averaged high-level pricing data more in line with innocuous due diligence rather than conspiratorial schemes.  *Omnicare*, 629 F.3d  at 720.

59.   At bar, the Appellant alleges Sprint shared specific competitively sensitive information with its competitor one year before the close of the merger.[14]

---

[13] Code of the District of Columbia § 28-4502 substantially mirrors Section 1 of the Sherman Act, 15 U.S.C.§ 1.

[14] Appellant Sealed Appendix pp. 34-35, ¶¶ 41-44 (Official Unredacted TAC requested from District Court) Exhibit 1; pp 80,81 ¶ 35.

24

Following the Second Circuit Court's rule of reason analysis from *Todd*, it is likely the exchange of this competitively sensitive information is indicia of anticompetitive activity.[15]

60.  In his TAC, the Appellant also argued the District of Columbia Bar Rules of Professional Conduct (""Professional Rules") was an official public policy that prohibited MoFo's disclosure of competitively sensitive information during the Sprint-T-Mobile merger. ECF No. 31 at 97; 114-122; No. 39 at 14 fn. 8. Inexplicably, citing *Kone v. District of Columbia*, 808 F. Supp. 2d 80 (2011), the District Court chooses to ignore Appellant's arguments in both his TAC and OPP_MTD as why the Professional Rules provide a proper nexus between the alleged violation and public policy.

61.  The District Court is correct finding *Kone* holds that arguments raised by defendant's in a dispositive motion not responded to are deemed conceded as correct.  *Kone*, 808 F. Supp. 2d at 83.   However, the District Court's reliance on *Kone* to justify its decision to ignore Appellant salient arguments rams a circle into a clearly defined square hole.    In *Kone* the Appellee in its motion to dismiss raised the issue that Appellant had failed to exercise an elusive remedy that barred her

---

[15]" No heightened pleading requirements apply in antitrust cases. "[A] short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases, as in other cases under the Federal Rules." *Todd*, 275 F.3d at 198.

25

from filing suit in federal court.   Appellant in her answer failed to address this

argument.   *Id.* at 83.   The facts in the underlying case are universes apart from

*Kone*.   First, Appellant raised the Professional Rules argument in his TAC and

cited *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 883-886

(D.C.1998) as the authority for why his claim was plausible.   Second, as stated

*supra*, Appellant did address his previous argument regarding *Wallace* in his

OPP_MTD.  Finally, and in sum, the District Court's reliance on *Kone* is an

application of the wrong law to Appellant's facts.  *Kone* involves a legal argument

put forth (plaintiff is barred by an exclusive remedy) in a motion to dismiss that

plaintiff failed to address not an argument regarding whether a case is relevant or

dispositive on a cause of action already argued by the plaintiff.   *Kone* would apply

if Appellant had for example failed to file an EEO action prior to bringing suit and

Appellee raised this issue in its MTD and Appellant did not address the issue.

Given that, the District Court could conclude the issue conceded.  Those are not the

facts here.

62.  Appellant stands by arguments in his TAC and OPP_MTD and believes

*Wallace* is dispositive on the Professional Rules being an articulated policy

discussed under *Leyden* v. *Am. Accreditation Healthcare Comm 'n,* 83 F. Supp. 3d

241, 248 (D.D.C. 2015).[16]

---

[16] The District Court's citation of *Leyden's* reasonable belief standard is contrary to
its citation of *Omwenga v. Nations Found*, No. 15-cv-786 (TSC), 2020 WL

63.   However, the District Court's application of the wrong law catastrophically affects Appellant's ability to argue the merits of any District Court decision agreeing with Appellee's argument against *Wallace*.  The District Court's failure to consider Appellant's *Wallace* arguments is an abuse of discretion.   See, *United States v. Estelan*, 156 F. Appx 185, 196 (11th Cir. 2005) ("An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment.).

64.   Finally, Appellant argues Hart-Scott-Rodino Antitrust Improvements Act of 1976 HSR, 15 U.S.C. §18a, also known as Section 7A of the Clayton Act ("HSR"), is a declared policy with a close fit prohibiting the disclosure of competitively sensitive information prior to a merger close.   Rejecting this argument, the District Court opines the HSR Act does not intrinsically prohibit the sharing of competitively sensitive information between merger partners before the close of deal.  ECF No. 56 at 24.

65.   As argued, whether the HSR Act intrinsically prohibits the disclosure of

---

5798428, at *5 (D.D.C. Sept. 29, 2020) actual violation requirement.  The conflict is resolved understanding *Leyden* citation is a pleading standard while the *Omwenga* citation is a summary judgment standard. *Omwenga*, No. 15-cv-786 (TSC) at  5 (While Omwenga technically pleaded a claim for gross fund mismanagement, UNF correctly points out that at summary judgment neither party briefed in detail whether [statute] provides a basis for wrongful discharge in violation of public policy.).

competitively sensitive information before the close of a deal draws legal theories of "gun-jumping" or "transfer of beneficial ownership"; however, the HSR Act does provide for per se violations when competitive sensitive information is exchanged between competitors prior to deal close. Appellant Unsealed Appendix pp. 90, 92, 95, 97.

66.   Competitive Impact Statements *United States of America v. Computer Associates Intl. Inc., et al.*, Civil Action No. 01 CV 02062 (D.D.C. April 2002) and *United States of America v. Gemstar-TV Guide Intl., Inc.*, et al., Civil Action No. 03 CV 000198 (D.D.C. March 2003); Administrative Complaints *United States of America v. Insilco Corp.*, Docket No. C-3783 (FTC Jan. 1998) and *United States of America v. Bosley, Inc. et al.*, Docket No. C-4404 (FTC May 2013), all explicitly show exchanges of competitively sensitive information between competitors are direct violations of the HSR Act or Federal Trade Commission Act, 15 U.S.C. §§ 41-58, and therefore, unlike the District Court opinion, are "not uprooted from any statute." [17]   Appellant Unsealed Appendix pp. 9, 10, 14, 21, 22; 48; 57, 59; 76, 78, 82, 83.

67.   The HSR Act is a specific law clearly reflecting a policy prohibiting sharing of

---

[17] In his TAC, Plaintiff cites https://www.ftc.gov/system/files/attachments/us-submissions-oecd-2010-present-other-international-competition-fora/gun-, jumping_united_states.pdf (last visited February 3, 2024) that includes links to *Gemstar* and *Computer Associates* competitive impact statements.  ECF No. 31 ¶ 99 fn. 17, 18; Appellant Unsealed Appendix  pp.  87-97.

competitively sensitive information between merger parties prior to deal close; the District Court's decision finding Appellant failed to state a claim must be overturned.

>   D. THE DISTRICT COURT MISAPPLIED THE CORRECT CONTROLLING LAW AND ABUSED ITS DISCRETION WHEN IT DISMISSED APPELLANT'S CLAIM WITH PREJUDICE.

68.   Lastly, relying on *Firestone v. Firestone*, 76 F.3d 1205 (1996), the District Court dismisses all of Appellants claims with prejudice.  Reaching this extreme procedural step, the District Court finds Appellees' argument that Appellant "does not put forward any factual allegations to show that [his white coworkers] were similarly situated to him in a way that would potentially allow for a discriminatory inference" persuasive indicia that Appellant could not possibly cure the deficiency. ECF No. 56 at 26 fn. 11.   Again, Appellant disagrees with the District Court.

69.   First, Appellant believes arguments put forward *supra* show that Appellant has effectively pled prime facie cases for all cause of actions under this appeal.  With that said, the District Court's narrow reasoning does not comport with its broad application of this drastic remedy to his hostile work environment or wrongful termination against public policy claims.   Arguendo, if Appellant could not possibly plausibly allege facts necessary to satisfy the similarly situated prong of his disparate treatment claim, how does that contaminate his other two cause of actions; it can't.

70.   Finally, the District Court's reliance on *Firestone* is wrong.  With respect to *Firestone*, the district court's decision was based on an erroneous finding plaintiffs were barred by statute from bringing the action.   Moreover, and relevant to the District Court's decision, citing *Jarrell v. United States Postal Serv.,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (quoting *Bonanno v. Thomas,* 309 F.2d 320, 322 (9th Cir.1962) , *Firestone* court stated, "A dismissal *with prejudice* is warranted only when a trial court "determines that 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone*, 76 F.3d at 1209.  As argued *supra*, inferences from Appellant's TAC demonstrate any alleged defect could be cured through amendment. ¶¶ 25-28.

# VIII.   CONCLUSION

71.   For the forgoing reasons this Court should reverse the District Court's final order finding the Appellant failed to state a claim for which relief can be granted for (i) disparate treatment; (ii) hostile work environment; and (iii) wrongful termination against public policy.  Alternatively, the Court should remand the District Court's order back to the District Court with instructions allowing Appellant leave to amend any deficiencies the Court may have determined.

Dated: February 6, 2024                     Respectfully submitted,

                                            By: /s/ Junius Joyner, III
                                            Appellant, *pro se*
                                            8280 Voyager Parkway
                                            Colorado Springs, CO 80920
                                             juniusj3@yahoo.com

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with Fed. R. App. P. Rule 32(a)(7)(B) word limitation. Excluding parts of the document exempted by Fed R. App. P. Rule 32 (f), the brief contains 6,047 words.

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. Rule(s) 32(a)(5) and 32(a)(6), it has been prepared using proportionally spaced Times New Roman 14-point type style.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing BRIEF FOR

APPELLANT, JUNIUS J. JOYNER, III was filed electronically this 6th day of

February 2024.  Notice of this filing will be sent to Appellees' counsel,

OGLETREE & DEAKINS, David L. Schenberg, 7700 Bonhomme Avenue, Suite

650, St. Louis, MO 63105, via operation of the Court's electronic filing system.


By: /s/ Junius Joyner, III

Junius Joyner, III
Appellant, *pro se*
8020 Voyager Parkway
Colorado Springs, CO 80920
juniusj3@yahoo.com
424.352.6193