**No. 23-7142**
CASE BEING CONSIDERED FOR TREATMENT
PURSUANT TO RULE 34(j) OF THE COURT'S RULES

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

JUNIUS J. JOYNER, III,

Plaintiff-Appellant,

v.

MORRISON & FOERSTER LLP,
MESTEL & COMPANY NEW YORK LLC,
EVAN M. HARRIS,
NATALIE A. FLEMING NOLEN, and
PATTI AYALA,

Defendants-Appellees.

Appeal from the United States District Court
for the District of Columbia
No. 1:20-cv-01440-TJK

**RESPONSE BRIEF OF DEFENDANTS-APPELLEES**

OGLETREE, DEAKINS, NASH,
STEWART, AND SMOAK, P.C.

David Lawrence Schenberg
7700 Bonhomme Avenue, Ste. 650
St. Louis, Missouri 63105
314.802.3935

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

<u>Parties</u>. The parties who appeared before the District Court are: Plaintiff-Appellant Junius J. Joyner, III ("Plaintiff"); Defendant-Appellee Morrison & Foerster LLP ("Morrison"); Defendant-Appellee Mestel & Company New York LLC ("Hire Counsel"); Defendant-Appellee Evan M. Harris; Defendant-Appellee Natalie A. Fleming Nolen; and Defendant-Appellee Patti Ayala.

<u>Rulings Under Review</u>. The rulings at issue are contained in the District Court's Order and Memorandum Order, dated September 27, 2023, granting Defendant's Rule 12(b)(6) motion to dismiss all claims in Plaintiff's Third Amended Complaint (TAC) with prejudice. SA 93-119. No official citation of the decision exists.

<u>Related Cases</u>. The case on review has not previously been before this or any other court. Counsel is not aware of "any other related case" before this Court or any other court.

## RULE 26.1 DISCLOSURE

Morrison & Foerster LLP has no parent company, and there is no publicly held company that has a 10% or greater ownership interest in it. Morrison & Foerster LLP is a law firm providing legal services internationally.

Mestel & Company is a d/b/a of The WOB Company, Inc. The WOB Company, Inc. is the direct parent of Mestel & Company New York LLC. The WOB Company, Inc. is also an affiliate of HC2, Inc., d/b/a Hire Counsel. HCMC Legal, Inc. is the parent company of both The WOB Company, Inc. and HC2, Inc. d/b/a Hire Counsel. There is no publicly held company that has a 10% or greater ownership in Mestel & Company New York LLC or HC2, Inc. d/b/a Hire Counsel. The WOB Company, Inc., d/b/a Mestel & Company and HC2, Inc. d/b/a Hire Counsel provide legal staffing services.

<u>TABLE OF CONTENTS</u>

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .i

RULE 26.1 DISCLOSURE ...................................................................ii

TABLE OF AUTHORITIES ...............................................................iv

GLOSSARY ........................................................................................ix

STATEMENT OF JURISDICTION ....................................................1

STATEMENT OF ISSUES..................................................................2

STATEMENT OF THE CASE .............................................................4

SUMMARY OF ARGUMENT ............................................................7

ARGUMENT ......................................................................................9

   I.    Plaintiff's § 1981 disparate treatment claims. .............................11

   II.   Plaintiff's § 1981 and Title VII hostile environment claims. ......27

   III.  Plaintiff's "public policy" wrongful discharge claims. .................41

   IV.  The District Court's Decision to Dismiss with Prejudice............54

CONCLUSION ..................................................................................57

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ....59

CERTIFICATE OF SERVICE.............................................................60

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abhe & Svoboda, Inc., v. Chao,*
    508 F.3d 1052 (D.C. Cir. 2007) ........................................................... 18

*Am. Wildlands v. Kempthorne,*
    530 F.3d 991 (D.C. Cir. 2008) ................................................. 23, 24, 39

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ............................................ 9, 10, 15, 34, 35, 52

*Atherton v. D.C. Off. of Mayor,*
    567 F.3d 672 (D.C. Cir. 2009) ........................................................... 11

*Ayissi-Etoh v. Fannie Mae,*
    712 F.3d 572 (D.C. Cir. 2013) ........................................................... 12

*In re Baby Food Antitrust Litig.,*
    166 F.3d 112 (3d Cir. 1999) .............................................................. 45

*Baird v. Gotbaum,*
    792 F.3d 166 (D.C. Cir. 2015) ................................................. 28, 29, 30

*Bekkem v. Wilkie,*
    915 F.3d 1258 (10th Cir. 2019) .......................................................... 16

*Beretson v. UHS of Delaware, Inc.,*
    180 A.3d 95 (D.C. 2018) ......................................................... 41, 42, 43

*Brown v. Children's Nat'l Med. Ctr.,*
    773 F. Supp. 2d 125 (D.D.C. 2011) .................................................... 40

*Brown v. Sessoms,*
    774 F.3d 1016 (D.C. Cir. 2014) ............................................... 12, 14, 15

*Burley v. Nat'l R.R. Passenger Corp.,*
    801 F.3d 290 (D.C. Cir. 2015) ........................................................... 15

iv

*Chambers v. District of Columbia,*
35 F.4th 870 (D.C. Cir. 2022) (en banc)................................. 13, 20, 21

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,*
589 U.S. ---, 140 S. Ct. 1009 (2020) ..................................................... 12

*Curran v. Holder,*
626 F. Supp. 2d 30 (D.D.C. 2009) ........................................................ 11

*Curry v. District of Columbia,*
195 F.3d 654 (D.C. Cir. 1999) ............................................................. 35

*Elec. Priv. Info. Ctr. v. IRS,*
910 F.3d 1232 (D.C. Cir. 2018) ............................................................. 9

*Faragher v. City of Boca Raton,*
118 S. Ct. 2275 (1998).................................................................... 28, 32

*Firestone v. Firestone,*
76 F.3d 1205 (D.C. Cir. 1996) ............................................................. 54

*George v. Leavitt,*
407 F.3d 405 (D.C. Cir. 2005) ............................................................. 33

*Harrigan v. Carson,*
No. 17-930 (TJK), 2019 WL 4737119 (D.D.C. Sept. 28,
2019)................................................................................................. 11

*Harris v. Forklift Sys., Inc.,*
114 S. Ct. 367 (1993)........................................................... 27, 28, 33

*Harris v. Sutton Motor Sales & RV Consignments Corp.,*
406 F. App'x 181 (9th Cir. 2010)........................................................ 33

*Herron v. Fannie Mae,*
861 F.3d 160 (D.C. Cir. 2017) .........................41, 42, 44, 46, 48, 52, 53

*Hogan v. Hayden,*
406 F. Supp. 3d 32 (D.D.C. 2019) ...................................................... 30

*Hopkins v. Blue Cross & Blue Shield Ass'n*,
Civil Action No. 10–900 (JDB), 2010 WL 5300536 (D.D.C.
Dec. 21, 2010) ................................................................... 42

*Joyner v. Prince William Cnty. Cir. Ct.*,
No. 22-cv-725, 2023 U.S. Dist. LEXIS 125023 (E.D. Va.
July 19, 2023) ................................................................... 11

*Joyner v. Prince William Cnty. Cir. Ct.*,
No. 22-cv-725, 2023 U.S. Dist. LEXIS 41010 (E.D. Va.
Mar. 10, 2023) ................................................................... 11

*Joyner v. Redmon*,
No. 21-cv-357, 2021 WL 2406871 (E.D. Va. June 11,
2021), *aff'd as modified sub nom. Joyner v. Redman*, No.
21-1690, 2021 WL 5412330 (4th Cir. Nov. 19, 2021) ................. 11, 15

*Kone v. District of Columbia*,
808 F. Supp. 2d 80 (D.D.C. 2011) ...................................... 47

*Kreuzer v. Am. Acad. of Periodontology*,
735 F.2d 1479 (D.C. Cir. 1984) ......................................... 45

*Lail v. U.S. Gov't*,
771 F. Supp. 2d 49 (D.D.C. 2011) ...................................... 50

*McAfee v. U.S. FDA*,
36 F.4th 272 (D.C. Cir. 2022) ........................................... 18

*Meritor Sav. Bank, FSB v. Vinson*,
106 S. Ct. 2399 (1986) ..................................................... 27

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
629 F.3d 697 (7th Cir. 2011) ............................................. 50

*Oviedo v. WMATA*,
948 F.3d 386 (D.C. Cir. 2020) ........................................... 11

*Park v. Howard Univ.*,
71 F.3d 904 (D.C. Cir. 1995) ............................................. 28

*Perkins v. WCS Constr., LLC*,
    No. Civil Action No. 18-751 (RC), 2020 WL 3128950
    (D.D.C. June 12, 2020)................................................................ 46

*Price v. Valvoline, L.L.C.*,
    88 F.4th 1062 (5th Cir. 2023) ..................................... 31, 33

*Redmon v. YMCA of Metropolitan Washington*,
    417 F. Supp. 3d 99 (D.D.C. 2019) ...................................... 15

*Richards v. Duke Univ.*,
    480 F. Supp. 2d 222 (D.D.C. 2007) .................................... 11

*Rosella v. Long Rap, Inc.*,
    121 A.3d 775 (D.C. 2015) .................................................... 53

*Savannah Heights Ltd. P'ship v. D.C. Hous. Auth.*,
    No. 21-7004, 2022 WL 566459 (D.C. Cir. Feb. 23, 2022) .................... 9

*Sickle v. Torres Advanced Enter. Sols., LLC*,
    884 F.3d 338 (D.C. Cir. 2018) ............................................. 9

*Sims v. Mills*,
    No. 08-cv-513-A, 2009 WL 4496233 (N.D. Tex. Dec. 3,
    2009)...................................................................... 26

*Stewart v. Evans*,
    275 F.3d 1126 (D.C. Cir. 2002) ......................................... 27

*Thompson v. OhioHealth Corp.*,
    No. 07-cv-110, 2008 WL 5233468 (S.D. Ohio Dec. 11,
    2008)...................................................................... 26

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001) ......................................... 45, 50

*In re Uchendu*,
    812 A.2d 933 (D.C. 2002) .................................................. 49

*United States v. Citizens & S. Nat'l Bank*,
    422 U.S. 86 (1975) .......................................................... 45

*United States v. U.S. Gypsum Co.*,
  438 U.S. 422 (1978) ................................................................. 45

*Vance v. Ball State Univ.*,
  133 S. Ct. 2434 (2013) ......................................... 24, 25, 29, 34, 35, 39

*Wallace v. Skadden, Arps, Slate, Meagher & Flom*,
  715 A.2d 873 (D.C. 1998) ..................................................... 53

*Wannall v. Honeywell, Inc.*,
  775 F.3d 425 (D.C. Cir. 2014) ............................................... 47

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*,
  389 F.3d 1251 ..................................................................... 54

*Yelling v. St. Vincent's Health Sys.*,
  82 F.4th 1329 (11th Cir. 2023) ............................................. 33

**Statutes**

15 U.S.C. § 18a ...................................................................... 44

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1331 ...................................................................... 1

28 U.S.C. § 1367 ...................................................................... 1

42 U.S.C. § 1981 ...................................... 1, 4, 11, 12, 14, 24, 25

42 U.S.C. § 2000e-2 ............................................................. 1, 4

GLOSSARY

"TAC" refers to Plaintiff's Third Amended Complaint filed with the District Court on February 19, 2021.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, in that Plaintiff alleges violation of 42 U.S.C. §§ 1981 and 2000e-2, and pursuant to 28 U.S.C. § 1367, in that Plaintiff's claim of wrongful discharge forms part of the same case or controversy as the federal claims.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, in that the District Court issued a final order on September 27, 2023, disposing of all claims and parties, and Plaintiff filed a timely notice of appeal in the District Court on October 23, 2023.

## STATEMENT OF ISSUES

I.     Whether the District Court correctly dismissed Plaintiff's claims of disparate treatment based on race, in that:

    (A)     Plaintiff failed to plead plausibly any adverse action;

    (B)     Plaintiff failed to plead plausibly that any actionable conduct was based on race; and/or

    (C)     Plaintiff failed to plead the additional facts required to hold the individual defendants liable.

II.     Whether the District Court correctly dismissed Plaintiff's claims of a racially hostile work environment, in that:

    (A)     Plaintiff failed to plead plausibly that there was a coherent hostile environment;

    (B)     Plaintiff failed to plead plausibly that there was an environment sufficiently hostile as to affect the conditions of his employment;

    (C)     Plaintiff failed to plead plausibly that any allegedly severe or pervasive hostile environment was based on his race; and/or

    (D)     Plaintiff failed to plead plausibly that any otherwise actionable hostile environment is imputable to any defendant.

III.    Whether the District Court correctly dismissed Plaintiff's wrongful discharge claims, in that:

    A.    Plaintiff failed to plead plausibly that the Hart-Scott-Rodino Act prohibits the conduct he complained about, or that it bears a "close fit" to his discharge;

    B.    Plaintiff failed to plead plausibly that the D.C. Code prohibits the conduct he complained about, or that it bears a "close fit" to his discharge; and/or

    C.    Plaintiff failed to plead plausibly that D.C. Rules of Professional Conduct 8.3 or 8.4 prohibit the conduct he complained about or bear a "close fit" to his discharge.

IV.    Whether the District Court abused its discretion in dismissing Plaintiff's claims with prejudice considering that:

    A.    Plaintiff had four opportunities to state a claim;

    B.    Plaintiff failed to state a claim despite prior notice of his pleading deficiencies; and

    C.    The repeated failure to cure pleading deficiencies by previous amendment is a recognized basis for denying additional amendment.

## STATEMENT OF THE CASE

The Third Amended Complaint is Plaintiff Junius Joyner's fourth attempt to state a legal claim based on his short stint working as a contract attorney. Legal staffing firm Mestel & Company New York LLC ("Hire Counsel") hired Plaintiff, a temporary at-will employee, and assigned him to work at the law firm Morrison & Foerster LLP ("Morrison"), where he provided support for a corporate, antitrust transaction involving a Morrison client. Plaintiff worked on the project for less than six months from July 1, 2019 until December 12, 2019.

Plaintiff filed his initial Complaint on May 29, 2020, alleging claims of racial discrimination and hostile work environment pursuant to 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 1981, and of wrongful discharge in violation of public policy, against Morrison and Hire Counsel. (Doc. 1). Morrison and Hire Counsel moved to dismiss the Complaint on August 6, 2020. (Doc. 7). Instead of responding to that motion, Plaintiff filed his First Amended Complaint on August 25, 2020. (Doc. 9). The First Amended Complaint purported to allege the same causes of action as the initial Complaint. Plaintiff then filed his Second Amended Complaint on September 16, 2020. (Doc. 12). The Second Amended Complaint added

4

the individual defendants: Evan Harris, a Morrison associate; Natalie Fleming Nolen, a Morrison partner; and Patti Ayala, VP of Human Resources for Hire Counsel.

Again, Defendants moved to dismiss on October 7, 2020. (Doc. 16). Again, in response to the motion, Plaintiff filed another complaint, the Third Amended Complaint, on February 19, 2021, ostensibly attempting, yet again, to replead his claims to address the various deficiencies and shortcomings chronicled in Defendants' motion. Appellees' Supplemental Appendix ("SA") 1-92. The Third Amended Complaint alleged the same causes of action against the same defendants as did the Second Amended Complaint.

All iterations of Plaintiff's complaints include the same basic allegations, including that: Plaintiff was not assigned to a "workstream" team as quickly as were others, but without any facts alleged showing that his assignment was adverse or racially motivated; Hire Counsel initially denied Plaintiff's request to work remotely for three days (making it so that he could avoid "inadvertently" violating a co-worker's court order against him), but without facts alleged showing that the denial adversely affected his employment or was racially motivated;

Plaintiff heard various alleged comments by various co-workers that Plaintiff perceived to be racially discriminatory, *e.g.*, a statement that prepaid wireless customers are "lower class"; statements that co-workers were Civil War re-enactors who played Confederate soldiers (which Plaintiff alleges indicated to him that those co-workers are thereby expressing their belief that current African Americans should be enslaved); a co-worker's failure one day to provide a "Good morning" greeting; and Plaintiff was discharged because he reported disclosures of unspecified "competitively sensitive information," although he cannot point to any statute or regulation that prohibits such disclosures.

Because the Third Amended Complaint (like its predecessors) failed to "state a claim upon which relief can be granted," Defendants filed their final motion to dismiss pursuant to Rule 12(b)(6). (Doc. 34). After full briefing, the District Court granted the motion on September 27, 2023, dismissing all claims with prejudice and entering judgment in favor of Defendants.

This appeal followed. The statutes upon which Plaintiff bases his purported claims are included in an addendum to this brief.

6

## SUMMARY OF ARGUMENT

The District Court correctly dismissed all claims.

<u>Disparate treatment claims</u>. Plaintiff failed to allege facts showing that his initial assignment adversely affected the terms of his employment or was racially motivated. Plaintiff also failed to allege facts showing that Hire Counsel's initial denial of his request to work remotely for three days (made "in an effort not to inadvertently violate a court order") adversely affected the terms of his employment or was racially motivated.

<u>Hostile environment claims</u>. Plaintiff failed to allege facts showing that he was subject to any coherent hostile environment, as opposed to a series of disconnected statements by various co-workers. Plaintiff failed to allege facts showing that most of the statements were racial. Plaintiff failed to allege facts showing that the conduct about which he complains was severe or pervasive enough to have affected the conditions of his employment. And Plaintiff failed to show that any liability for the statements of various co-workers could be imputed to any Defendant.

<u>Wrongful discharge claims</u>. Plaintiff failed to identify any statute or regulation that specifically reflects a public policy prohibiting the

7

activity he complained about, much less that there is a "close fit" between the policy and his allegedly wrongful termination. The only facts Plaintiff alleges are that he reported a disclosure of "competitively sensitive information." Plaintiff identified no statute or regulation that prohibits such disclosures, and thus does not bring himself within the "very narrow" ambit of a viable wrongful discharge cause of action.

Dismissal with prejudice. Plaintiff unsuccessfully attempted to state his claims four times, with three efforts to amend his original complaint. In light of the multiple failures through prior amendment to cure pleading deficiencies articulated in successive motions to dismiss, the District Court was well within its discretion to grant the motion to dismiss with prejudice.

## ARGUMENT

## **Defendants-Appellees' Motion to Dismiss**

### Standard of review

This Court reviews "the district court's dismissal *de novo* and may affirm its judgment on any basis supported by the record." *Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232, 1236 (D.C. Cir. 2018).

### Standard for motion to dismiss.

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, eliminate fatally flawed claims, and thereby spare litigants the burden of unnecessary pretrial activity. *Savannah Heights Ltd. P'ship v. D.C. Hous. Auth.*, No. 21-7004, 2022 WL 566459, *3 n.5 (D.C. Cir. Feb. 23, 2022); *Sickle v. Torres Advanced Enter. Sols., LLC,* 884 F.3d 338, 344-45 (D.C. Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal punctuation and citation omitted). The complaint must "show," not just allege, the plaintiff is entitled to relief. *Id.* at 1950. (*citing* FED. R. CIV. P. 8(a)(2)).

Testing the sufficiency of the complaint thus involves two steps.

*Iqbal*, 129 S. Ct. at 1949-50. First, the court eliminates allegations that "are no more than conclusions." *Id.* at 1950. Neither "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," nor "legal conclusion[s] couched as . . . factual allegation[s]," nor "naked assertions devoid of further factual enhancement" suffice. *Id.* at 1949.

Second, "[w]hen there are well-pleaded factual allegations, a court should . . . determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950. That is, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable." *Id.* at 1949. When the complaint allows inference only of the "mere possibility" of liability, "it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949-50 (internal citation omitted).[1]

---

[1] Because this Court is reviewing the correctness of the District Court's Rule 12(b)(6) dismissal of the TAC, the materials properly before this Court are the TAC (SA 1-39), exhibits thereto (SA 40-92), the District Court's Order dismissing the TAC (SA 93), and the District Court's Memorandum Opinion explaining the Order (SA 94-119). Those materials have been included in a Supplemental Appendix, pursuant to Cir. R. 24(b). Except as explained herein, Defendants object to, and the Court should ignore, Plaintiff's appendices because they include matter outside the TAC and not presented to the District Court.

A *pro se* plaintiff is not exempt from Rule 12(b)(6). *See Oviedo v. WMATA*, 948 F.3d 386, 397 (D.C. Cir. 2020) ("While we liberally construe *pro se* pleadings, *pro se* litigants do not have a license to ignore the Federal Rules of Civil Procedure." (internal citation omitted)); *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009). In fact, when the *pro se* plaintiff is himself an attorney, as here, courts apply the rules just as stringently as to any represented plaintiff. *See Harrigan v. Carson*, No. 17-930 (TJK), 2019 WL 4737119, *1 n.1 (D.D.C. Sept. 28, 2019); *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 234-35 (D.D.C. 2007).[2]

I.    <u>Plaintiff's § 1981 disparate treatment claims.</u>

   A.    <u>The law regarding § 1981 claims.</u>

---

[2] Plaintiff here, in particular, is no stranger to civil litigation. *See*, *e.g.*, *Joyner v. Redmon*, No. 21-cv-357, 2021 WL 2406871 (E.D. Va. June 11, 2021) (dismissing case), *aff'd as modified sub nom. Joyner v. Redman*, No. 21-1690, 2021 WL 5412330 (4th Cir. Nov. 19, 2021); *Joyner v. Prince William Cnty. Cir. Ct.*, No. 22-cv-725 (PTG/JFA), 2023 U.S. Dist. LEXIS 41010 (E.D. Va. Mar. 10, 2023) (dismissing case); *Joyner v. Prince William Cnty. Cir. Ct.*, No. 22-cv-725 (PTG/JFA), 2023 U.S. Dist. LEXIS 125023, at *7, 16 (E.D. Va. July 19, 2023) (granting pre-filing injunction and sanctions based on Plaintiff's "history of filing vexatious, harassing, and duplicative lawsuits").

"Section 1981 prohibits private employers from intentionally discriminating on the basis of race with respect to the 'benefits, privileges, terms, and conditions' of employment." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013). To survive a motion to dismiss, a plaintiff must plead facts showing that his race is the but-for cause of an adverse employment action that affects the terms or conditions of his employment. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. ---, 140 S. Ct. 1009, 1014 (2020). This requires pleading facts to show (1) an adverse employment action that (2) occurred under circumstances giving "rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class)." *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (parenthetical in original) (internal punctuation and citation omitted).

B.    <u>Plaintiff's disparate treatment claim against Morrison.</u>

Plaintiff's claim against Morrison is limited to a single allegedly adverse act: Plaintiff alleges that Morrison did not assign him to "a particular workstream" until two months after he was placed on the project, but assigned two or three Caucasian attorneys immediately to a

workstream upon their addition to the project. SA 5-6, ¶22. The District Court dismissed the claim because, even assuming the assignment amounted to an adverse action, Plaintiff failed to plead any facts showing that the different treatment was due to his race. SA 103-05.

1.    The later assignment to a "workstream" is not adverse.

The District Court could have dismissed the claim because Plaintiff's claimed adverse action is merely that he received a different assignment for his first two months than some received for their first two months.

Plaintiff pleaded no facts showing that his initial assignment adversely affected the terms or conditions of his employment. "[N]ot everything that happens at the workplace affects an employee's terms, conditions, or privileges of employment." *Chambers v. District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022) (en banc) (quotations omitted). Plaintiff does not allege what a "workstream" or any other assignment consists of, much less show that one assignment is less desirable than the other.

At most, Plaintiff speculates about a theoretical way in which the supposed absence of an immediate workstream "could" have affected his

compensation, but he goes no further than such conjecture. Plaintiff alleges that his initial assignment "could" have affected his hours and thus his "ability to earn," but he never concretely alleges (much less with specific facts) that it did so for him or anyone else. SA 6 ¶23. To the contrary, what the actual pleaded facts show is that Plaintiff reduced his own hours (and compensation) because he was upset about a Morrison associate allegedly describing prepaid wireless customers as "lower class." SA 5 ¶21. These allegations do not plausibly demonstrate an actionable adverse action under Section 1981.

2.   <u>The assignment to a "workstream" is not due to race.</u>

As the District Court correctly found, "even assuming Plaintiff has adequately pleaded an adverse employment action, he has still failed to plausibly allege that [Morrison] delayed assigning him to a workstream *because of his race*." SA 104 (emphasis added).

"A plaintiff can raise an inference of discrimination by showing 'that [he] was treated differently from similarly situated employees who are not part of the protected class.'" *Brown*, 774 F.3d at 1022 (citation omitted). Plaintiff relied on that pleading approach (and only that

14

approach) before the District Court, and now again on appeal. *See* SA 18 ¶82; Appellant's Br. at 9-11.

Plaintiff fails, however, to provide any facts in the TAC to plausibly show that he is similarly situated to any of his supposed comparators. A comparator is "similarly situated" if "the relevant aspects of [Plaintiff's] employment situation were nearly identical to those of the other employee[s]." *Burley v. Nat'l R.R. Passenger Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (internal punctuation and citation omitted).[3] To "show," rather than just "allege," *Iqbal*, 129 S. Ct. at 1950, that "similarly situated" employees were treated more favorably, Plaintiff must thus allege facts showing that the employees in question were "similarly situated" in all relevant aspects. *See, e.g.*, *Brown*, 774 F.3d at 1023 (finding plaintiff alleged sufficient facts where she not only set forth the published criteria for tenure, she alleged facts showing she and the

---

[3] The District Court cited *Redmon v. YMCA of Metropolitan Washington*, 417 F. Supp. 3d 99 (D.D.C. 2019), as legal authority on this point. *See* Doc. 56 at 11.  Plaintiff attempts to distinguish *Redmon* by arguing that "as a threshold matter [*Redmon*] was a supervisor and his coworkers, or comparators, were all subordinates." Appellant's Br. at 5.  But aside from that one distinction, the other throughlines remain: Plaintiff still failed to allege that his alleged comparators were at all similarly situated to him in their titles, job duties, experience, or method of hire.

comparator shared those criteria). Absent that, "[a] plaintiff's assertion that [he] is 'similarly situated' to other employees is just a legal conclusion—and a legal conclusion is never enough." *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019).

Plaintiff failed to plead facts showing he was "similarly situated" to his alleged comparators. The only allegations that even hint at that showing come in a footnote. Plaintiff compares himself to "Co-Worker 1 and 2," who were allegedly added to the project while he was working, and to "Co-Worker 3," who he alleges ("on information and belief") started working before he did and was immediately assigned to a workstream. *See* SA 5-6 ¶22 n.2. But Plaintiff pleads no facts as to whether these attorneys were hired by Hire Counsel (like he was), or some other staffing agency, or were hired directly by Morrison. *Id*. Plaintiff pleads no facts as to whether these attorneys had similar work experience to his in amount, quality, or type. *Id*. Plaintiff pleads no facts as to whether these attorneys handled the same sort of work as he did, whether they shared a supervisor, or whether the same person decided their assignment(s). *Id*. Plaintiff pleads no facts showing whether Morrison's needs were the

same when he started and when the others started. *Id*.[4] Beyond that, as to other unidentified attorneys Plaintiff references, he alleges only "on information and belief" that they were hired through Hire Counsel but does not say whether they worked on the same corporate transaction as did Plaintiff, much less provide any of the other relevant information. *Id*. These pleading shortcomings persisted across each iteration of Plaintiff's complaint below, despite Defendants' repeated arguments about Plaintiff's failure to allege facts that show that the other co-workers were purported comparators, and to plausibly show any differential treatment based on his race, whether in relation to supposed comparators or otherwise.

Because Plaintiff pleads no facts from which the District Court could infer he was discriminated against based on his race—in that he pleads no facts showing that he was treated differently than similarly situated comparators outside his protected class—the District Court dismissed the claim. This Court should affirm.

---

[4] For example, Co-Workers 1 and 2 could have been hired anytime between July 2 and December 12, 2019, and Plaintiff does not say how much earlier Co-Worker 3 was hired than him. *See* SA 1 ¶2, 5-6 ¶¶22-23, n.2.

### 3.   Plaintiff's argument on appeal lacks merit.

Plaintiff's only argument for reversal lacks merit. Indeed, it reinforces that this Court should affirm the District Court's dismissal.

First, Plaintiff effectively admits that his complaint is deficient. Instead of pointing to factual allegations in the TAC, Plaintiff relies (in a footnote) on what he "intended" to assert and on material *outside* his complaint in an effort to demonstrate his comparators are "similarly situated." *See* Appellant's Br. at 6 n.1. That, of course, is improper for two reasons. The point of a Rule 12(b)(6) motion is to test the sufficiency of the complaint itself, so that neither what Plaintiff "intended" to include nor any outside material is relevant. *See Abhe & Svoboda, Inc., v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). Furthermore, Plaintiff may not rely here on anything not presented to the District Court. *See McAfee v. U.S. FDA*, 36 F.4th 272, 277 (D.C. Cir. 2022).

Second, not only are Plaintiff's "inten[tions]" about pleading who hired the contract attorneys irrelevant, even actual pleading of such allegations would still fail to show: (1) whether all Hire Counsel hires worked on the same project; (2) whether some of the attorneys were hired

directly by Morrison; and (3) any facts showing that these attorneys and he shared similar qualifications.

Third, as regards comparative qualifications with other attorneys, Plaintiff's only argument boils down to claiming that all the attorneys on the antitrust project met some minimum standard.[5] Thus, Plaintiff states that being hired by Hire Counsel shows "at the very minimum a requisite knowledge to perform the required task." Appellant's Br. at 6. But that does not show that all attorneys on the project, or even all attorneys hired by Hire Counsel on the project, had a similar amount, quality, or type of antitrust experience, nor that all attorneys on the project performed the same "required task." Indeed, although Plaintiff posits in his brief that he might have had "superior" antitrust experience to his comparators, he fails to acknowledge that the others might have been the ones with "superior" antitrust experience. Appellant's Br. at 7.

Fourth, Plaintiff does not even try to address the other deficiencies noted by the District Court, including whether the comparators and Plaintiff handled the same sort of work, shared a supervisor, or received

---

[5] The (improper) cited Appendix pages also do not show anything about comparative qualifications, but only that Hire Counsel was looking for attorneys with antitrust experience.

assignments from the same source—all factors that are critical to whether they were similarly situated when it came to their assignments (whether in the form of a "workstream" or otherwise).

C.      Plaintiff's disparate treatment claim against Hire Counsel.

Plaintiff's allegation against Hire Counsel—about his request to work remotely for three days—similarly fails to state a claim.

1.      The "remote" work issue is not adverse.

The District Court could have dismissed that claim because Plaintiff's claimed adverse action is merely that Hire Counsel "denied" his request to work remotely for three days. SA 13 ¶ 57.

Once again, "not everything that happens at the workplace affects an employee's terms, conditions, or privileges of employment." *Chambers*, 35 F.4th at 874 (internal quotations omitted). Indeed, it is that requirement—that the action rise to the level of affecting the "terms, conditions, or privileges of employment"—that provides the statute its "necessary limiting principle," preventing every perceived slight from becoming an actionable lawsuit. *Id.* at 877.

Plaintiff pleaded no facts showing that the denial of his request to work remotely for three days affected the terms or conditions of his

employment. Indeed, careful reading shows Plaintiff did not actually allege that he ultimately had to go into the office or take time off (or even that the initial denial was not quickly reversed). Similarly, Plaintiff makes no allegation that the concern underlying his request—*i.e.*, his "effort not to inadvertently violate a court order"—was ever adversely implicated or not otherwise accommodated. SA 13-14 ¶¶ 57-58. In *Chambers*, this Court explicitly left room for defendants to point out that any harm was *de minimis*. 35 F.4th at 875. Here, Plaintiff has alleged no facts showing any effect on the terms and conditions of his employment, and no facts showing any harm at all.

### 2.    The "remote" work issue is not due to race.

Even assuming Plaintiff pleaded enough to state an adverse action, he "does not allege any facts from which the Court might plausibly infer that Hire Counsel was motivated by discriminatory intent." SA 105.

Again, Plaintiff relies for evidence of discriminatory intent on the idea he was treated differently than a "similarly situated" comparator. And again, Plaintiff fails because he cannot point to pleaded facts that show he was, in fact, similarly situated to his alleged comparator—*i.e.*, "Co-Worker 1." SA 13 ¶57. For example, Plaintiff again provides no facts

suggesting that he and Co-Worker 1 had the same employer, decisionmaker regarding remote work, reason for requesting remote work, assignments, or the same level of expertise, experience, qualification, or responsibility.

Indeed, instead of showing that he and Co-Worker 1 are similarly situated, the TAC expressly pleads two key differences. First, Co-Worker 1 filed two lawsuits *against Plaintiff* in the Domestic Violence Unit of the Superior Court of the District of Columbia, which seem to be (1) the origin of the court order against him and (2) the reason Co-Worker 1 was allowed to work remotely. SA 9 ¶32, n.6, 9-10 ¶34, ¶36, 13 ¶57, 84-86, 89-90. Second, the reason Hire Counsel gave Plaintiff for its November 17, 2019 denial of his remote work request is that he ignored a directive that employment matters should go to Hire Counsel. *See* SA 13-14 ¶58; Doc. 31-5. Plaintiff admits he had instead first approached Morrison with his request. SA 13 ¶57. The TAC contains no allegation that Co-Worker 1 even worked for Hire Counsel nor, if she did, that she made the same repeated mistake he did.

### 3.    Plaintiff's argument on appeal lacks merit.

Plaintiff's only response to the dismissal of this claim is to admit

the TAC is deficient. That is, Plaintiff admits the TAC "does not explicitly state that Hire Counsel employed Co-Worker 1." Appellant's Br. at 10. Instead of pleaded facts, Plaintiff offers only the circular suggestion that Co-Worker 1 must have worked for Hire Counsel or else he would not have tried to use her as a comparator. *Id.* Plaintiff cites no authority for the self-fulfilling proposition that every proposed comparator must, by virtue of having been proposed, therefore be "similarly situated." Plaintiff also fails to address the absence of any other pleaded facts to show the other aspects of the "similarly situated" analysis identified by the District Court. Having failed to address those other grounds for the dismissal, Plaintiff has forfeited those issues. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (holding that an issue not addressed in the opening brief is forfeited).[6]

D.    The discrimination claims against the individual defendants.

The disparate-treatment claims against individual defendants Evan Harris, Natalie Fleming Nolen, and Patti Ayala likewise fail, and

---

[6] Plaintiff's opening brief makes no argument regarding the District Court's dismissal of his purported claim that Hire Counsel failed to investigate discriminatory comments and thereby treated him disparately in that regard. *See* SA 106 n.6. Plaintiff has thus forfeited that issue as well. *See Am. Wildlands*, 530 F.3d at 1001.

the District Court correctly dismissed them.

First, and most straightforwardly, Plaintiff's individual-defendant claims are forfeited because Plaintiff wholly failed to address the issues in his opening brief on appeal. *See Am. Wildlands*, 530 F.3d at 1001.

Second, as the District Court held, the claims fail because individual liability "can be imposed [only] for [a supervisor's] personal involvement in discriminatory activity *that violates Section 1981*." Doc. 56 at 10 n.3 (quoting *Brown v. Children's Nat'l Med. Ctr.*, 773 F. Supp. 2d 125, 136 (D.D.C. 2011)) (emphasis in original). Thus, the claims against the individual defendants fail because the claims against Morrison (Harris and Nolen) and Hire Counsel (Ayala) fail.

Third, the claims fail because the TAC does not show that Harris, Nolen, or Ayala: (1) were: his supervisors—*i.e.*, persons empowered to take actions such as hiring, firing, failing to promote, reassigning with significantly different responsibilities, or making decisions causing significant change in benefits, *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013);[7] who also (2) were personally involved in the alleged adverse

---

[7] Plaintiff alleges the same definition of supervisor for purposes of assessing individual liability. *See* SA 5-6 ¶22.

actions.

Plaintiff pleads no facts that either Harris, Nolen, or Ayala were responsible for the fact that his assignment to a "workstream" allegedly occurred two months after he started. Instead, Plaintiff alleges only that Harris and Nolen *delivered* his initial assignment at the beginning of his placement at Morrison. SA 5-6 ¶22. Plaintiff makes no other factual allegations suggesting Harris or Nolen had the requisite power to qualify as his supervisor for purposes of § 1981. Although Plaintiff references an email between Nolen and Harris discussing his separation, the email merely addresses the logistics as to whether anyone from Morrison would be present, but certainly not whether to let him go in the first place. *See* Doc. 31-6. The remainder of Plaintiff's allegations consist of conclusory allegations of authority and the "colloquial" use of the term "'supervisor'" rejected in *Vance*. *See* 133 S. Ct. at 2443. Similarly, Plaintiff may have shown that Ayala delivered the alleged denial of his remote work request, but he pleads no facts that she had the authority to make any adverse employment decisions.

Fourth, the TAC presents no facts from which a court might infer that Harris, Nolen, or Ayala took any action because of Plaintiff's race.

There is no allegation, for instance, that Ayala granted any other request for remote work, much less from a similarly situated comparator. There is no allegation that Harris or Nolen made any decision about when to assign anyone to a workstream, much less that either treated a similarly situated comparator more favorably. And there is no other pleaded fact showing that any of the individuals had any racial bias, much less were motivated by such bias with regard to any alleged actions toward Plaintiff.

The lack of any racial bias evidence is only underscored by Plaintiff's reliance on the allegation that Harris "referred to prepaid wireless customers as having "low class" or "lower class" than postpaid wireless customers." SA 4-5 ¶¶19-20. Despite Plaintiff's speculation, race-neutral references to socio-economic status are not evidence of racial bias. *See Sims v. Mills*, No. 08-cv-513-A, 2009 WL 4496233, *8 (N.D. Tex. Dec. 3, 2009) (comments that plaintiff is "poor and uneducated" are not evidence of racial bias); *Thompson v. OhioHealth Corp.*, No. 07-cv-110, 2008 WL 5233468, *5 (S.D. Ohio Dec. 11, 2008) (reference to "those poor people" is "too ambiguous to support an inference of race discrimination").

For all the foregoing reasons, the Court should affirm dismissal of

Plaintiff's claims against the individual defendants.

II.    <u>Plaintiff's § 1981 and Title VII hostile environment claims.</u>

The Court should also affirm the District Court's dismissal of Plaintiff's hostile environment claims.

A.    <u>The law regarding hostile environment claims.</u>

"[N]ot all workplace conduct that may be described as 'harassment'" is actionable. *Meritor Sav. Bank, FSB v. Vinson*, 106 S. Ct. 2399, 2405 (1986).

First, the statutes do not "prohibit all forms of workplace harassment, only those directed at discrimination because of [race]." *Stewart v. Evans*, 275 F.3d 1126, 1133 (D.C. Cir. 2002).

Second, even when the conduct is arguably race-based, the statutes prohibit only conduct that is "sufficiently severe or pervasive"—*i.e.*, so "permeated with discriminatory intimidation, ridicule, and insult"—"to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 114 S. Ct. 367, 370 (1993) (internal quotations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find

27

hostile or abusive—is beyond [the statute's] purview." *Id.* "[T]o amount to a change in the terms and conditions of employment," "conduct must be extreme." *Faragher v. City of Boca Raton*, 118 S. Ct. 2275, 2284 (1998). Thus, for example, "casual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action." *Park v. Howard Univ.*, 71 F.3d 904, 906 (D.C. Cir. 1995) (internal citation omitted).

Third, plaintiffs cannot string together a series of unrelated and disparate conduct to make a claim. Instead, the "constituent acts" claimed to constitute a hostile environment "must be adequately linked such that they form a coherent hostile environment claim." *Baird v. Gotbaum*, 792 F.3d 166, 168-69 (D.C. Cir. 2015) (internal quotations omitted). "For example, they might involve the same type of employment actions, occur relatively frequently, and be perpetrated by the same managers." *Id.* at 169 (internal quotations omitted).

Fourth, even when conduct rises to the level prohibited by the statutes, employers are not automatically deemed liable for it. The statutes draw a line between harassment by "supervisors" and non-supervisors, where "supervisor" includes only those "empowered by the

employer to take tangible employment actions against the victim." *Vance*, 133 S. Ct. at 2439. If the person creating the hostile environment meets that definition of "supervisor," then the employer is vicariously liable (subject to an affirmative defense), but otherwise "the employer is liable only if it was negligent in controlling working conditions." *Id*.

B.    <u>Plaintiff's hostile environment claim against Morrison.</u>

Plaintiff failed to plead facts showing that Morrison is plausibly liable for a hostile work environment.

First, Plaintiff does not allege any linked acts that might form a "coherent hostile environment claim." *Baird*, 792 F.3d at 168-69. Instead, Plaintiff alleges a hodgepodge of disconnected acts by a variety of persons, complaining that: (1) Morrison associate Harris stated prepaid wireless users were "low class" or "lower class"; (2) he was not immediately assigned to a "workstream"; (3) Co-Worker 4 did not return Plaintiff's greeting of "Good Morning;" (4) an African American co-worker asked Plaintiff how he could stand to be in that room; (5) one unidentified co-worker called him "Boy," and other unidentified co-workers referred to White students posing with rifles in front of an Emmett Till memorial as "stupid", and other unidentified co-workers discussed participating in

Civil War re-enactments as Confederate soldiers; (6) as regards a conference room from which Plaintiff had already moved away due to what he allegedly perceived as racial toxicity, Harris supposedly said "We don't want you down there"; (7) Ayala told him he could not work remotely; (8) Co-Worker 1—who was later terminated for making false, racially-motivated accusations against him—harassed him and told him he was there only due to affirmative action; and (9) due to an unidentified person at Morrison, he was not told he was discharged as soon as he might have been. *See* SA 6-8 ¶¶25-27, 8 ¶29, ¶31, 9 ¶33, 12 ¶ 47, 16-17 ¶74. These allegations are far too varied and disjointed to plausibly comprise a single "coherent hostile environment claim." *Baird*, 792 F.3d at 168-69.

Second, with regard to most of the alleged actions, Plaintiff has failed to allege any plausible racial component or motivation. Plaintiff cannot turn facially-neutral actions into racial harassment based on his speculative allegations about what the actor intended. *See Hogan v. Hayden*, 406 F. Supp. 3d 32, 54 (D.D.C. 2019) ("'[S]ubjective harm is insufficient to support a hostile work environment claim because the test for severity and pervasiveness is an objective one.'" (*quoting Gray v. Foxx*,

637 F. App'x 603, 608 (D.C. Cir. 2015))); *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1067 (5th Cir. 2023) ("[S]ubjective belief of racial motivation, without more, is not sufficient to show a hostile work environment." (internal citation omitted)).

Neither the alleged "lower class" comment nor the workstream assignment shows any plausible racial bias. Plaintiff pleads no facts showing that Co-Worker 4 failed to acknowledge his "Good Morning" for racial reasons. Plaintiff likewise fails to explain how a co-worker's comment about him being in the room is race-related. Not only does Ayala not work for Morrison, Plaintiff admits that Morrison had *approved* his remote work. SA 13-14 ¶58. The alleged statement by Harris (who did not work in the conference room) about "we" not wanting Plaintiff to be in the room—where Plaintiff did not want to be—could be based on anything.

Plaintiff's allegations regarding Emmett Till and Civil War re-enactments also do not show racial bias, so much as assume it. Plaintiff admits the unidentified co-workers said the White students posing with rifles in front of the Memorial were "stupid." SA 6-7 ¶25. Plaintiff goes on to say he "believes" the comment was directed at their failure to

remain anonymous (as opposed to condemning the actions). *Id.* But even if that were true it hardly denotes support of the students' actions (whose motivation Plaintiff also assumes). *See id.* Plaintiff similarly admits that his conclusion—that the references to Civil War re-enactments are racist—is based on his own opinion that anyone who participates in a Civil War re-enactment as a Confederate is thereby supporting the enslavement of African Americans. *See* SA 7-8 ¶26. That is a speculative leap unsupported by any pleaded facts. And Plaintiff points to no factual allegations (or explanation) for his conclusion that the timing of his discharge was related to his race.

What remains are Plaintiff's accusations of racism regarding Co-Worker 1. But even accepting those allegations as true (despite their conjectural nature), Plaintiff admits that Co-Worker 1, in fact, "was terminated for making false accusations against the Plaintiff." SA 10 ¶36.

Third, taken together, and especially after weeding out the patently non-racial allegations, Plaintiff's claim falls short of showing the sort of "extreme" conduct, *Faragher*, 118 S. Ct. at 2284, and atmosphere "permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment," *Harris*, 114 S. Ct. at 370 (1993).

Indeed, federal courts have found that conduct more egregious than that in this case does not rise to the level of a hostile work environment. *See, e.g., George v. Leavitt*, 407 F.3d 405, 408, 416-17 (D.C. Cir. 2005) (black female told by three separate employees to "go back to Trinidad" or "back to where [she] came from," shouted at her, told her she should not have been hired and to "shut up," and assigned clerical duties not given to white male peers); *Price*, 88 F.4th at 1067 (co-workers told black plaintiff "you people always want something for free," nitpicked his work, and yelled at him for asking a question); *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1333 (11th Cir. 2023) (co-workers asked if President Obama's visit was for "handing out food stamps," said Michelle Obama "looks like a monkey" and that the President "needs to go back to Africa," referred to black patients as "crack heads" or "ghetto fabulous," and talked about their "redneck status," owning guns, and being "confederate flag flyers"); *Harris v. Sutton Motor Sales & RV Consignments Corp.*, 406 F. App'x 181, 182-83 (9th Cir. 2010) (finding three racial comments,

33

including being called ""n*****r" twice, not "severe or pervasive enough").

Fourth, even if the alleged conduct was sufficiently "severe or pervasive" to be actionable, Plaintiff has not alleged facts showing that Morrison could plausibly be held liable for it. Co-workers, not supervisors, committed all the conduct alleged to be racial, and their status as Plaintiff's contemporaries and not supervisors does not impute liability to Morrison.

Despite Plaintiff's conclusory allegations, he pleaded no facts showing that Harris—an associate attorney—was "empowered . . . to take tangible employment actions against" him. SA 2 ¶5; *Vance*, 133 S. Ct. at 2439. As an associate attorney at Morrison, Harris had no authority to dictate, order, modify, or otherwise alter the terms or conditions of employment of Plaintiff. Plaintiff's musings to the contrary are not based on any plausible factual allegations, and, if anything, they are contrary to common sense—which the Court need not leave at the door. *See Iqbal*, 129 S. Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."). Thus, as a matter of law, Plaintiff pleaded no facts showing that Harris was his supervisor for purposes of imputing vicarious liability to Morrison. *Id.*

Plaintiff's pleading deficiency is underlined by his argument in this Court that "discovery" might reveal the requisite facts. Appellant's Br. ¶ 42. Plaintiff has it exactly backward: the Supreme Court has made clear that a plaintiff must first plead a plausible case, and only then "unlock the doors of discovery." *Iqbal*, 129 S. Ct. 1950. In any event, none of the allegations show that Harris's conduct amounts to racial harassment, much less actionable harassment.

Thus, in addition to everything else he needed to plead for an actionable claim, Plaintiff must have pleaded facts showing that Morrison "was negligent in controlling working conditions." *Vance*, 133 S. Ct. at 2439. That is, Plaintiff must have pleaded facts showing that Morrison "knew or should have known of the harassment and failed to implement prompt and appropriate corrective action." *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999). But Plaintiff did not plead the requisite negligence facts in the TAC. The only behavior of which Plaintiff claims Morrison actually had notice relates to Co-Worker

1. Plaintiff alleges he brought Co-Worker 1's actions toward him to the attention of Morrison. SA 9 ¶33. But far from negligence, Morrison acted on this information, by separating Plaintiff from Co-Worker 1, until such time as Co-Worker 1's accusations against him were found to be "false" and her employment terminated. SA 9-10 ¶¶34-36.

Plaintiff's claim that Harris (the associate attorney) knew about any other objectionable conduct is pure speculation piled on more speculation. According to Plaintiff, an African-American secretary's comment asking how he can stand to be in that room indicates that racism in "this room" was common knowledge at Morrison. Appellant's Br. ¶ 52. There are no pleaded facts to support any of this. It is pure speculation that the secretary was commenting on racism, and even more speculation that such an understanding was common knowledge. Indeed, in the TAC, Plaintiff points to the secretary's particular proximity to the room as giving her an ability to "overhear" whatever it was she was commenting about. SA 8 ¶28. Plaintiff takes a particularly speculative leap when he concludes, based only on Harris's unexplained statement, "We don't want you down there," that "he was in league with these men

and—especially given his office location being closer than the secretary—was aware of the racial harassment." Appellant's Br. ¶ 52.

Accordingly, Plaintiff's hostile environment claim against Morrison fails because Plaintiff failed to plead facts showing a racially hostile environment and, even if he had shown such an environment, he failed to plead facts showing Morrison was negligently responsible for it. For any or all of these reasons, this Court should affirm dismissal.

C.    <u>Plaintiff's hostile environment claim against Hire Counsel.</u>

Plaintiff's hostile environment claim against Hire Counsel fails for similar reasons. Indeed, Plaintiff's claim against Hire Counsel is based on facts incorporated from the allegations against Morrison, plus three other insufficient allegations. SA 28 ¶¶126-27. Plaintiff adds that: that Hire Counsel sent him an email denying him remote work and threatening termination, after he failed to follow a prior directive to address employment matters to Hire Counsel (not Morrison); failed to tell him he was fired before he came to work his last day; and Hire Counsel failed to act after Plaintiff reported discrimination. *Id.* at ¶127.

None of these additional allegations, however, include any facts showing they were motivated by Plaintiff's race. The closest Plaintiff

comes is his conclusory allegation that "similarly situated" others were granted remote work, but he fails to allege facts showing these others were, in fact, "similarly situated." *Id*. The allegations, indeed, suggest otherwise. Plaintiff says he wanted to work remotely only to avoid "inadvertently violat[ing] a court order" against him. SA 13 ¶57. The only person actually identified as being allowed to work remotely is Co-Worker 1, but she appears to have been working remotely for reasons related to her two lawsuits *against Plaintiff* filed in the Domestic Violence Unit of the Superior Court of the District of Columbia (not to avoid "inadvertently violat[ing] a court order)." SA 9-10 ¶32, n.6, ¶34, ¶36, 13 ¶57, 84-86, 89-90. Moreover, Hire Counsel explained to Plaintiff in the email denying his request that he had ignored a directive that employment matters should go to Hire Counsel (not Morrison). *See* SA 13-14 ¶58, 91. Plaintiff admits he had instead first approached Morrison with his request, and there is no indication Co-Worker 1 (if she even worked for Hire Counsel) committed the same error. SA 13 ¶57.

Thus, Plaintiff fails to show any coherent hostile environment claim against Hire Counsel, much less a racially hostile environment so severe or pervasive as to affect the conditions of his employment. Moreover,

although Plaintiff does allege he reported allegedly discriminatory comments to Hire Counsel, he has nonetheless failed to show it negligently failed "in controlling [his] working conditions" because he failed to show it could have controlled the conditions, which were at Morrison's office. *Vance*, 133 S. Ct. at 2439. As set forth above, Plaintiff has failed to allege facts showing that the co-workers in question were Hire Counsel employees at all, as opposed to Morrison employees or the employees of other agencies.

As with his claim against Morrison, Plaintiff's hostile environment claim against Hire Counsel fails because Plaintiff failed to plead facts showing a racially hostile environment and, even if he had shown such an environment, he failed to plead facts showing Hire Counsel was negligently responsible for it.

D.   The hostile environment claims against individual defendants.

Plaintiff's hostile environment claims against the individual Defendants likewise fail.

First, those claims fail because Plaintiff failed to address the liability of the individual Defendants in his opening brief and thus forfeited those claims. *See Am. Wildlands*, 530 F.3d at 1001.

Second, because the hostile environment claims fail against Morrison and Hire Counsel, the subset of claims involving the individual Defendants also fails.

Third, even if claims against Morrison and/or Hire Counsel more broadly were plausibly alleged (they were not), the allegations against the individual Defendants fail due to insufficient facts showing their "personal involvement" in creating a hostile environment. *See Brown*, 773 F. Supp. 2d at 136. The allegations against Harris do not show sufficiently severe or pervasive racial conduct by him to constitute an actionable hostile work environment. To the contrary, the allegations consist of the claim he made the racially-neutral comments about pre-paid wireless customers being "lower class" and that "we don't want you down there." Even if they were racial, the two isolated comments are neither severe nor pervasive. The allegations against Nolen (that she told Plaintiff to avoid the woman he said was making false accusations against him) and Ayala (that she denied his remote work request and failed to address Co-Worker 1's conduct, though Plaintiff admits Co-Worker 1 was in fact fired for her conduct) are just as race-neutral and

isolated, and similarly fail to state a claim for a racially hostile environment.  These claims were properly dismissed.

III.  Plaintiff's "public policy" wrongful discharge claims.

Finally, the Court should also affirm the District Court's dismissal of Plaintiff's wrongful discharge claims.

A.  The law regarding wrongful discharge claims.

A District of Columbia wrongful discharge claim is a "very narrow" exception to the rule that employers may discharge at-will employees "at any time and for any reason, or for no reason at all." *Herron v. Fannie Mae*, 861 F.3d 160, 170 (D.C. Cir. 2017) (internal punctuation and citations omitted).

To state a claim, the wrongful discharge plaintiff must show three things.

First, the plaintiff must identify "the existence of specific laws or regulations that clearly reflect a policy prohibiting the activity about which the employee complained." *Herron*, 861 F.3d at 170.  "[T]he well-pleaded factual allegations of the complaint [must] show that [the conduct complained of] actually would have violated [the statute]." *Beretson v. UHS of Delaware, Inc.*, 180 A.3d 95, 106 (D.C. 2018). By

limiting the cause of action "to statutory and constitutional provisions, courts are prevented from defining nebulous concepts of public policy and creating exceptions based on conduct that simply tends to be injurious to the public or against the public good." *Herron*, 861 F.3d at 170. (internal punctuation and citations omitted). Thus, a claim cannot depend on violation of a statute's "general purpose" or "goals," *id*. at 171, nor be based on the plaintiff's mistaken belief about what a statute prohibits. *Beretson*, 180 A.3d at 106.

Second, even where a plaintiff identifies a specific statute or regulation, he must show "a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." *Herron*, 861 F.3d at 170 (internal punctuation and citation omitted). That is, the plaintiff must show that the conduct complained about related to the policy and "would have been consequential enough that it would have been forbidden by" the statute in question. *Beretson*, 180 A.3d at 108 & n.35 (no claim where plaintiff argued violation of HIPAA policy based on increased risk of unintentional disclosure by adding additional registrars). *See also Hopkins v. Blue Cross & Blue Shield Ass'n*, Civil Action No. 10–900 (JDB), 2010 WL 5300536, *6 (D.D.C. Dec. 21, 2010)

42

(no claim where plaintiff alleged she was fired for complaining that being assigned clerical tasks risked the employer's tax-exempt status, because policy reflected by IRS Code 501(c)(3) relates to public subsidization of political activity and there was nothing political about the plaintiff's clerical tasks).

Third, if plaintiff identifies a statute that specifically prohibits the activity about which the employee complained and has the requisite "close fit," plaintiff must still show that "the employer's sole (or at least predominant) reason for terminating the employee was the employee's" protected activity. *Beretson*, 180 A.3d at 105 (parenthetical in original and quotations omitted).

Plaintiff's claim fails to satisfy these requirements at every turn.

B.    The claims against Morrison and Hire Counsel.

Plaintiff has not stated a claim for wrongful discharge against Morrison or Hire Counsel. Plaintiff bases his claim on the allegation that he brought to Morrison's attention "perceived antitrust violations" based on his "good faith belief" that Morrison (representing one party in a potential merger) had violated antitrust laws by providing "competitively sensitive information" to the proposed merger partner. SA 4 ¶16, 11 ¶40,

43

24 ¶110. Plaintiff, however, has not shown that any statute or regulation prohibits the conduct complained about, much less the requisite close fit.

Plaintiff relies on three sources of public policy. None of them supports his wrongful discharge claim. Even if the claimed disclosure occurred, none of the authorities relied on by Plaintiff expresses a clear policy against such disclosure under the circumstances alleged.

1.    Hart-Scott-Rodino Act (HSR Act).

According to Plaintiff, the HSR Act "requires companies meeting certain thresholds [to] file premerger notification with the Federal Trade Commission." SA 21 ¶98. The HSR Act also establishes a waiting period after such notification. *See* 15 U.S.C. 18a.

The HSR Act does not, however, prohibit exchanges of "competitively sensitive" information. Indeed, Plaintiff does not even allege that the HSR Act prohibits exchanges of such information. Instead, Plaintiff relies on an FTC "guidance for businesses to avoid violating antitrust laws during this premerger period." SA 21-22 ¶¶99-100. But an FTC "guidance" is not a "statute or regulation," and thus lacks the "statutory anchor" required for a public policy wrongful discharge claim. *Herron*, 861 F.3d at 170. Furthermore, as Plaintiff admits, the guidance

also does not prohibit the exchange of "competitively sensitive information," nor even indicate that any law does so. Instead, the guidance simply warns that "[e]xchanges of competitively information between competitors *could* lead to . . . violations of [HSR Act.]." SA 21-22 ¶99 (emphasis supplied).

Fatally, Plaintiff alleges no additional facts showing that the alleged disclosure purportedly arose under circumstances that would make it prohibited by antitrust law. The mere exchange of competitively sensitive information does not itself violate the law. *See United States v. Citizens & S. Nat'l Bank*, 422 U.S. 86, 113 (1975); *see also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) (noting that exchanges of current pricing information have the greatest potential for generating anticompetitive effects, but such exchange "does not invariably have anticompetitive effects"); *Todd v. Exxon Corp.*, 275 F.3d 191, 211-13 (2d Cir. 2001) (discussing factors for courts to determine whether information exchange supports an inference of an illegal agreement); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 124-26 (3d Cir. 1999) (exchanges of pricing information does not always evidence an illegal agreement); *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1487

45

(D.C. Cir. 1984) ("[I]t is not enough to prove that the alleged co-conspirators merely exchanged information.").

## 2.   District of Columbia Restraint of Trade Code.

Similarly, the pleaded provisions of District of Columbia law do not prohibit the conduct Plaintiff says he reported. Section 28-2501 merely sets forth the general purpose of the chapter, *see* SA 22 ¶101, and does not proscribe any conduct, thus it is not enough to support a wrongful discharge claim, *see Herron*, 861 F.3d at 171. Section 28-2502 broadly prohibits "[e]very contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce." SA 22 ¶102. Section 28-4503 broadly makes it "unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce."

Such broad statements of law are not sufficiently narrow to support a public policy wrongful discharge claim based on Plaintiff's alleged facts of identifying, in his opinion, potentially risky conduct. *See Perkins v. WCS Constr., LLC*, No. Civil Action No. 18-751 (RC), 2020 WL 3128950, *4 (D.D.C. June 12, 2020); SA 23 ¶103. Section 28-4506 does not prohibit anything, but contains penalties. *See id.* at ¶104.

In short, Plaintiff fails to show the D.C. Code prohibits what Plaintiff reported—*i.e.*, the mere disclosure of "competitively sensitive information."

### 3.    D.C. Rules of Professional Conduct.

For two separate reasons, Plaintiff's attempt to rely on the D.C. Rule of Professional Conduct for attorneys also fails to support reversal.

First, as the District Court held, Plaintiff abandoned this basis for his claim by failing to address (indeed, expressly refusing to address) the arguments made by Defendants in the motion to dismiss briefing. *See* SA 114 n.8 (*citing* Doc. 43 at 19 n.8). Because Morrison and Hire Counsel presented an argument in their opening District Court brief, explaining why the Rules of Professional Conduct could not support his claim, his refusal to address that argument does concede the issue. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428-30 (D.C. Cir. 2014) (holding that the lower court did not abuse its discretion in deeming the failure to address an argument raised in the opposition brief as conceded); *see also Kone v. District of Columbia*, 808 F. Supp. 2d 80, 83 (D.D.C. 2011).

Second, abandoned or not, Plaintiff is wrong about the Rules of Professional Conduct providing a basis for his wrongful discharge claim.

47

The Rules are not a statute or regulation, and thus do not satisfy the requirement that there be a "statutory anchor" for a public policy wrongful discharge claim. *Herron*, 861 F.3d at 170. Indeed, Plaintiff admits that the Rules are promulgated by a judicial body (TAC ¶116), and thus cannot be the source of public policy for a wrongful discharge claim. *See Herron*, 861, F.3d at 170 (citing *Rosella v. Long Rap, Inc.*, 121 A.3d 775, 778 (D.C. 2015) ("By tying new causes of action to statutory and constitutional provisions, we would refrain from defining 'nebulous' concepts of public policy, and leave such definitions to the legislature, which is in a far better position than a court to make policy decisions on behalf of the citizenry" (internal citations omitted)).

But even if the Rules had been enacted by a legislative or executive branch, nothing in them announces a clear policy against "disclosure of competitively sensitive information" to a potential merger partner. Instead, Rules 8.3 and 8.4 simply and broadly require reporting to the "appropriate professional authority" a lawyer's violations of the Rules, criminal violations, fraud and other dishonesty, or interference with the administration of justice. SA 25 ¶¶114-15. The Rules thus not only presuppose a violation of some law or knowingly dishonest conduct,

48

which Plaintiff has yet to show, they specifically require reporting to a professional authority, not internally to the firm about which he is complaining. *See In re Uchendu*, 812 A.2d 933, 939-40 (D.C. 2002) (violation of Rule 8.4(c) requires a "dishonest state of mind").[8]

The Rules of Professional Conduct thus do not provide either a clear, specific statement regarding the conduct at issue at all, nor a close fit with the particular conduct at issue here. Thus, even if the issue had not been waived by Plaintiff, it would not help him.

C.    <u>Plaintiff's arguments on appeal lack merit.</u>

Plaintiff's arguments in this Court fail to identify any error in the District Court's dismissal of his wrongful discharge claims. If anything, Plaintiff's arguments reinforce the propriety of dismissal.

With regard to the HSR Act and the D.C. Code, Plaintiff states that "[c]entral to the issue before this Court is whether the exchange of competitively sensitive information prior to the close of the merger can plausibly be considered a conspiracy in the restraint of trade." Appellant's Br. at 23.

---

8 Indeed, the TAC alleges the subject disclosure may have been "unknowing[]." *See* SA 26-27 ¶119.

Immediately thereafter, Plaintiff cites two authorities that demonstrate his failure to state a claim. Plaintiff cites *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001), for the proposition that "exchange of information is **not** *per se* [a] violation," Appellant's Br. at 24, and then cites *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697 (7th Cir. 2011), where the court found that even sharing "pricing" information did **not** violate the law, Appellant's Br. at 24. What Plaintiff ignores is that all he pleaded is the sharing of unidentified "competitively sensitive information." In other words, Plaintiff pleaded less than the unsuccessful plaintiff in *Omnicare*, and states a claim only if all disclosures *ipso facto* violated the law, a notion rejected in *Todd*.

Plaintiff's own conclusion—that the HSR Act "does provide for per se violations when competitive information is exchanged"—is unsupported by a single authority (and contradicts the language he quotes from *Todd*). Appellant's Br. at 28. Plaintiff includes in an appendix a number of filings from various antitrust matters.[9] None of

---

[9] Because the filings are presumably public, they would not be precluded from consideration on a Rule 12(b)(6) motion if they had been presented to the District Court, unlike Plaintiff's evidentiary submissions, which are improper on consideration or review of a Rule 12(b)(6) motion. *See Lail v. U.S. Gov't*, 771 F. Supp. 2d 49, 59 (D.D.C. 2011) (citing 5B

them, however, supports his argument that the HSR Act or any other antitrust statute provides the requisite public policy for his claim.

To the contrary, all of the filings support only the conclusion that the mere disclosure of "competitively sensitive information" does not constitute a violation of any law.  If it did, the filings would be much shorter. It may (or may not) be that disclosures often accompany antitrust violations, but actual violations require "agreements to fix prices," "agreements . . . to allocate markets and customers," failure to maintain independence during the merger process, Public Appx. at 37, 42, 45), disclosure of particular information such as "prior customer negotiations; detailed customer-by-customer price quotes; current pricing policies and strategies; and detailed, customer-by-customer future pricing strategies" and, even then only where such "would likely have been detrimental to competition in the relevant markets if the [deal] had not been consummated," *id*. at 59, 61, or "exchanges of information . . . [that] had the effect of reducing . . . uncertainty about a competitor" where [t]he reduction of uncertainty facilitated coordination and

---

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004)).

51

endangered competition," *id*. at 80.  As a result, the filings actually show that simply pleading a complaint about the disclosure of "competitively sensitive information," as here, does not constitute a complaint about conduct prohibited by "specific laws or regulations that clearly reflect a policy prohibiting the activity." *Herron*, 861 F.3d at 170.

At bottom, Plaintiff's brief fails to appreciate that stating a plausible wrongful-discharge claim requires more than pleading facts that he believes suggest the possibility of a violation. When the complaint allows inference only of the "mere possibility" of liability, "it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949-50.

Plaintiff's argument regarding the Rules of Professional Conduct likewise lacks merit.

First, Plaintiff admits a failure to address an opponent's argument concedes it, but then attempts to avoid the consequences of that rule. *See* Appellant's Br. at ¶ 61. Plaintiff claims he did address this argument in his opposition to the motion to dismiss. *Id*. Examination of that document reveals, however, that Plaintiff addressed Defendants' argument only in its footnote 8, and there only by explaining why "Plaintiff does not

address violations of Professional Rules." *See* Doc. 43 at 14 n.8. In other words, the only way in which Plaintiff mentioned these arguments below was by explicitly advising that he was not planning to address them.

Second, Plaintiff's explanation in the footnote for not addressing Defendants' argument is that he already asserted his reasons "in his TAC ¶115," where he cited *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873 (D.C. 1998), as supporting his claim here. But the case does even not support Plaintiff's claim. To the contrary, the case makes clear that—even assuming the judicially-enacted Rules of Professional Conduct could provide the public policy for a wrongful discharge claim, and even further assuming that the Rules create a duty to report to the firm rather than the Office of Bar Counsel—the plaintiff must still identify underlying wrongful conduct by another attorney. *Id.* at 884-885. Not only are the assumptions now foreclosed, *see Herron*; 861 F.3d at 170; *Rosella*, 121 A.3d at 778, Plaintiff has not pleaded any violation of antitrust law by any Morrison attorney that might have created a duty to report or a basis for his public policy claim.

Accordingly, the District Court correctly dismissed Plaintiff's wrongful discharge claims, and this Court should affirm.

IV.   **The District Court's Decision to Dismiss with Prejudice**

Standard of review.

This Court reviews the District Court's decision to dismiss the Third Amended Complaint with prejudice (and to thereby deny leave to file another amended complaint) for abuse of discretion. *See U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("[I]t is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment'" (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

The District Court did not abuse its discretion.

The District Court did not abuse its discretion in denying leave for Plaintiff to file a fourth amended complaint in this case. To the contrary, the District Court had good reason to deny Plaintiff yet another bite at the apple. Indeed, one of the explicitly recognized "sufficient reason[s]" for denying leave to amend is "repeated failure to cure deficiencies by previous amendments." *Firestone*, 76 F.3d at 1208 (internal punctuation and citation omitted).

Plaintiff has already tried four times to state a claim in this case, including three times with regard to the same substantive claims now at issue.

Plaintiff filed his initial complaint on May 29, 2020. (Doc. 1). In response to a motion to dismiss, Plaintiff then filed his First Amended Complaint on August 25, 2020. (Doc. 9). The First Amended Complaint included all the substantive claims now at issue in the Third Amended Complaint—*i.e.*, disparate treatment based on race, hostile environment based on race, and wrongful discharge based on his concerns about antitrust violations. *Id.*

Then Plaintiff filed a motion for leave to file his Second Amended Complaint, which the District Court granted on September 16, 2020. (Doc. 12). The Second Amended Complaint added the individual defendants. *Id.*

Defendants then filed a motion to dismiss the Second Amended Complaint (Doc. 17). That motion to dismiss addressed all the claims of the Second Amended Complaint, which included all the substantive claims and parties now at issue in the Third Amended Complaint. *Id.*

55

In response to the motion to dismiss the Second Amended Complaint, Plaintiff then asked for leave to file a Third Amended Complaint, which the District Court granted on February 12, 2021. (Doc. 23). Defendants then filed their motion to dismiss the Third Amended Complaint, which the District Court granted with prejudice on September 27, 2023. SA 94-119.

In its Memorandum Opinion, the District Court explained that "Plaintiff has already amended his complaint three times," and that "[l]eave to amend is not warranted where there has been repeated failure to cure deficiencies by previous amendments." SA 119 n.11.

Indeed, the District Court gave examples of how, in the motion to dismiss the Second Amended Complaint, defendants pointed out the very deficiencies that remain in the Third. *See id.* It could have given numerous other examples. (*See* Doc. 17 at 16-18 (addressing lack of facts showing adverse action; at 18-20, addressing lack of facts showing discriminatory motive in any action; at 20-28, addressing lack of facts showing liability for racially hostile environment; at 28-33, addressing lack of facts showing individual liability, and at 33-41, addressing lack of facts showing wrongful discharge)).

The District Court is correct, and certainly within its discretion to conclude that Plaintiff should not be given yet another—*i.e.*, a fifth—chance to plead his claims. Litigation must at some point come to an end, and the District Court's conclusion that this litigation is over should be affirmed.

## CONCLUSION

Plaintiff failed to plead facts stating any plausible claim for relief. Plaintiff's disparate treatment claims fail because he failed to plead facts showing either an adverse action or that any such action was motivated by his race. Plaintiff's hostile environment claims fail because he failed to plead facts showing racial conduct so severe or pervasive as to affect the terms of his employment, or that such conduct could be imputed to any defendant. Plaintiff's wrongful discharge claim fails because he failed to show any statute prohibiting the conduct about which he complained, much less a close fit between the statute and his termination. And because Plaintiff has now tried and failed to cure his pleading deficiencies with repeated amendments, the District Court was well within its discretion to dismiss his claims with prejudice.

This Court should affirm the District Court's judgment in full.

/s/ *David L. Schenberg*

David L. Schenberg
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
7700 Bonhomme Avenue, Ste. 650
St. Louis, MO 63105
Telephone: 314.802.3935
Facsimile: 314.802.3936
david.schenberg@ogletree.com

Attorney for Defendants/Appellees
Morrison & Foerster LLP, Mestel &
Company New York LLC, Evan M.
Harris, Natalie A. Fleming Nolen, and
Patti Ayala

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 10,543 words.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14 point, Century Schoolbook font.

3.    This Brief has been formatted as a .PDF using Adobe 10.0, and has been scanned and to the best of my knowledge is virus free.

/s/ *David L. Schenberg*
Attorney for Defendants/Appellees Morrison & Foerster LLP, Mestel & Company New York LLC, Evan M. Harris, Natalie A. Fleming Nolen, and Patti Ayala

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed with the Clerk of the Court through the Court's CM/ECF system on this 29th day of March, 2024, and that service of same was made via electronic delivery via the CM/ECF System to all participants.

/s/ *David L. Schenberg*
Attorney for Defendants/Appellees Morrison & Foerster LLP, Mestel & Company New York LLC, Evan M. Harris, Natalie A. Fleming Nolen, and Patti Ayala

60