**REPLY BRIEF FOR APPELLANT, JUNIUS J. JOYNER, III**

**CASE BEING CONSIDERED FOR TREATMENT
PURSUANT TO RULE 34(j) OF THE COURT'S RULES**

---

**UNITED STATES COURT OF APPEALS FOR
THE DISTRICT OF COLUMBIA CIRCUIT**

---

**23-7142**

---

**JUNIUS J. JOYNER, III,**

**Appellant,**

v.

**MORRISON & FOERSTER EL AL.,**

**Appellee.**

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

Junius J. Joyner, III
Appellant, *pro se*
8020 Voyager Parkway
Colorado Springs, CO 80920
Telephone: 424.352.6193
Email: juniusj3@yahoo.com

May 3, 2024

# TABLE OF CONTENTS

I.   STANDARD OF REVIEW ........................................................... 1

II.  APPELLEES' ARGUMENTS ....................................................... 3

    A.   PLAINTIFF'S § 1981 DISPARATE TREATMENT CLAIMS..... 3

    B.   PLAINTIFF'S § 1981 AND TITLE VII HOSTILE
        ENVIRONMENT CLAIMSSL ........................................................ 8

    C.   PLAINTIFF'S CLAIM FOR WRONGFUL DISCHARGE
        AGAINST PUBLIC POLICY ....................................................... 16

    D.   DISTRICT COURT'S DISMISSAL OF PLAINTIFF'S CLAIMS
        WITH PREJUDICE ..................................................................... 24

III. CONCLUSION .......................................................................... 26

i

# TABLE OF AUTHORITIES

## CASES

*Arnold v. Speer*, 251 F. Supp. 3d 269 (D.D.C. 2017)....................................4

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ......................................................18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..................................18

*Carl v. Children's Hosp.*, 702 A.2d 159 (D.C. 1997) ...............................17, 19, 22-24

*Castillo v. P & R Enterprises, Inc.*, 517 F. Supp. 2d. 440 (D.D.C. 2007)....................5

*Davis v. Cmty. Alts. of Wash., D.C., Inc.*, 74 A.3d 707 (D.C. 2013)...........................23

*Faragher v. City of Boca Raton* , 524 U.S. 775 (1998)..........................................12,16

*Farrar v. Wilkie*, No. 18-cv-1585, 2019 WL 3037869 (D.D.C. July 11, 2019)............4

*Fennell v. AARP*, 770 F. Supp. 2d 118 (D.D.C. 2011) ....................................4

*Firestone v. Firestone*, 76 F.3d 1205 (1996) ........................................24, 25

*First National Bank of North East v. Fockler*, 649 F.2d 213 (4th Cir. 1981) ..............1

*Freas v. Archer Servs., Inc.* , 716 A.2d 998 (D.C. 1998) .............................17

*Furnco Constr. Corp. v. Waters,* 438 U.S. 567 (1978) ...............................13

*Goode v. Billington*, 932 F. Supp, 75 (D.D.C. 2013) ...............................16

*Gordon v. U.S. Capitol Police*, 778 F.3d 158 (D.C. Cir. 2015) .....................................4

*Harris v. District of Columbia Water & Sewer Auth.*, 791 F.3d 65 (D.C. Cir. 2015)...4

*Herron v. Fannie Mae*, 861 F.3d 160 (D.C. Cir. 2017).............................17, 18, 22, 24

*Hogan v. Hayden*, 406 F. Supp. 3d 32 (D.D.C. 2019)................................11

*Hunter, et al. v. Sprint Corp.*, 346 F.Supp.2d 113 (D.D.C. 2004) ................................5

*Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100 (D.C. Cir. 2011) .........................4

*Lail v. United States Government,* 771 F. Supp. 2d 49 (D.D.C. 2011) .......................20

*Leyden v. Am. Accreditation Healthcare Comm'n* , 83 F.Supp.3d 241 (D.D.C. 2015) ..............................................................................................17

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) …...………………………13

*McIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223 (D.D.C. 2005) ..............................................................................................18

*McNair v. District of Columbia*, 213 F. Supp. 3d 81(D.D.C. 2016) ............................ 4

*Muldrow v. City of St. Louis, Missouri et al.*, 144 S. Ct. 967 (2024) .......................... 7

*Nurriddin v. Bolden*, 674 F. Supp. 2d 64 (D.D.C. 2009) ............................................ 10

*Omwenga v. Nations Found*, No. 15-cv-786 (TSC), 2020 WL 5798428, (D.D.C. Sept. 29, 2020) ................................................................................................................. 18

*Rosella v. Long Rap, Inc.*, 121A.3d 775 (D.C. 2015) ................................................. 22

*Ross v. Kemp,* 785 F.2d 1467 (11th Cir.1986) ............................................................ 1

*Ruifang Hu v. K4 Solutions, Inc.*, Civil Action No. 18-cv-1240 (TSC) 2020 WL 1189297 (D.D.C. 2020) ......................................................................... 4, 5, 23

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) .................................................... 13

*Townsend v. U.S.,* 236 F. Supp 3d 280 (D.D.C 2017) .................................................. 14

*Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873 (D.C.1998) ......... 24

*Webster v. U.S. Department of Energy*, 267 F.Supp.3d 246 (2017) ........................... 15

**STATUTES**

Title 15 U.S.C. §18a ..................................................................................................... 20

Title 15 U.S.C. §§41-58 ................................................................................................ 20

Title 42 U.S.C. §2000(e)-2(a)(1) ................................................................................... 7

Code of the District of Columbia §28-4502 ................................................................. 21

Code of the District of Columbia §28-4503 ................................................................. 21

Code of the District of Columbia §28-4506 ................................................................. 21

**OTHER AUTHORITIES**

*United States of America v. Bosley, Inc. et al.*, Docket No. C-4404 (FTC May 2013) ........................................................................................................................... 20

*United States of America v. Computer Associates Intl. Inc., et al.*, Civil Action No. 01 CV 02062 (D.D.C. April 2002) ............................................................................ 19

*United States of America v. Gemstar-TV Guide Intl., Inc.*, et al., Civil Action No. 03 CV 000198 (D.D.C. March 2003) .......................................................................... 19

*United States of America v. Insilco Corp.*, Docket No. C-3783 (FTC Jan. 1998) ..... 19

**RULES**

District of Columbia Bar Rules of Professional Conduct Rules 8.3 ............................ 21

District of Columbia Bar Rules of Professional Conduct Rules 8.4 ........................... 21

Fed R. App. P. Rule 10 .................................................................................... 1, 2

Fed R. Civ. P. Rule 12(b)(6) ................................................................................ 18

# I.    STANDARD OF REVIEW

1.    The errors in Appellees' Brief are numerous. Overarching these errors, Appellees attempt to restrict the Court's review to the meager set of documents presented in their Supplemental Appendix II.   Appellees' Brief (AB), p. 20, fn. 1. Without providing statutory authority, the Appellees posit the Court may only consider Mr. Joyner's Third Amended Complaint (TAC), the District Court's Order dismissing the TAC, and the District Court's Memorandum Opinion explaining the Order. *Id*.  This standard of review is light-years away from accurate.

2.  Fed. R. App. P. Rule 10 (a) defines the record on appeal as: "the original papers and exhibits filed in the district court; the transcript of proceedings, if any; and a certified copy of the docket entries prepared by the district clerk.".  *Id*. Furthermore, guidance from the Fourth Circuit Court of Appeals requires an appellate court to review a district court's decisions using the same record before the district court.  See, *First National Bank of North East v. Fockler*, 649 F.2d 213, 215-16 (4th Cir. 1981).   However, Fed R. App. P. Rule 10(e) gives this Court the authority to supplement the record on motion or of its own accord. Moreover, the Eleventh Circuit in *Ross v. Kemp,* 785 F.2d 1467, 1474-75 (11th Cir.1986) held appellate courts have an "inherent equitable authority" to supplement the record on appeal to include material not before the district court and provided an enumerated non-exclusive list of what to consider:  i) whether the

1

material would establish the proper resolution of the issue, ii) whether remand to the district court to consider the material would be contrary to the interests of justice and waste resources; or iii) whether supplementation is warranted in light of the unique power federal judges' possess.

3.   Appellees intentional omission of Fed. R. App. P. Rule 10 authority would exclude vital arguments discussed in Mr. Joyner's Brief and arguments put forth *infra*. Specifically, Appellees seek to exclude Mr. Joyner's unredacted TAC that contains detailed disclosures of what competitively sensitive information was exchanged and is paramount to his wrongful discharge against public policy claim and his Plaintiff's Response To Defendants' Motion To Dismiss Plaintiff's Third Amended Complaint motion ("RMTD") that is highly relevant to his disparate treatment and hostile work environment claims.  ECF No. 30; 39; Appellant Appendix Supplemental-Under Seal, p. 61.

4.   Additionally, Appellees seek to eliminate documents and transcripts discussed in his TAC showing the behavior of co-workers and supervisors towards Mr. Joyner was motivated by racial animus that is central to his disparate impact and hostile work environment claims.  Accordingly, the Court must reject Appellees attempt to restrict its review to anything other than authority provided under Fed. R. App. P. Rule 10 and cited case law.

2

## II.    APPELLEES' ARGUMENTS

### A.    PLAINTIFF'S § 1981 DISPARATE TREATMENT CLAIMS

5.  Appellees argue:  Plaintiff failed to allege facts showing that his initial assignment adversely affected the terms of his employment or was racially motivated.  Plaintiff also failed to allege facts showing that Hire Counsel's initial denial of his request to work remotely for three days (made "in an effort not to inadvertently violate a court order") adversely affected the terms of his employment or was racially motivated.  AB, p. 17.

ARGUMENT – MORRISON & FOERSTER (MOFO)

6.  Appellees flawed argument begins by trying to claw-back the District Court's finding that not being assigned to a workstream was in fact an adverse event.  AB, pp. 23-24; ECF No. 56, pp. 10-11.  The Court can ignore Appellees' argument because the District Court found that not being "able to take phone calls as early or as late as attorneys assigned to workstreams," thereby reducing the hours he could work and the compensation he could earn compared to his white counterparts" was in fact an adverse event. ECF No. 56, pp. 10-11.

7.  The Appellees next argue Mr. Joyner failed to plausibly allege that MoFo delayed assigning him to a workstream "because of his race.".   AB, p. 24. Appellees' argument relies on the faulty supposition that Mr. Joyner did not provide "any facts sufficient in the TAC to plausibly show he is "similarly situated" to any of his supposed comparators.".  AB, p. 25.  Appellees' argument

can be whittled down to Mr. Joyner allegedly not providing comparator "titles, job duties, experience, or method of hire.".  AB, p. 25, fn. 3.

8.  "Courts in this Circuit 'have consistently recognized the ease with which a plaintiff claiming employment discrimination can survive ... a motion to dismiss[.]' " *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (quoting *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011)). A plaintiff need not "plead every fact necessary to establish a prima facie case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citation omitted); *see Farrar v. Wilkie*, No. 18-cv-1585, 2019 WL 3037869, at *2 (D.D.C. July 11, 2019) (citing *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015)). Nonetheless, a plaintiff must allege sufficient facts "about 'what ... [,] who ... [,] and how' that make such a claim plausible." *Id.* (quoting *Arnold v. Speer*, 251 F. Supp. 3d 269, 273 (D.D.C. 2017) (brackets and ellipses in original); *see Harris v. District of Columbia Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015) (explaining that while a plaintiff need not plead a prima facie case on a motion to dismiss, the plaintiff must nonetheless allege facts that if accepted as true would make the discrimination claims plausible).".  *Ruifang Hu v. K4 Solutions, Inc.*, Civil Action No. 18-cv-1240 (TSC) 2020 WL 1189297 at 6 (D.D.C. 2020).

9.  Furthermore, the *Ruifang* court  explained, "a plaintiff need not "make out a prima facie case of discrimination in [her] complaint, specifically point to similarly

4

situated employees who were given preferential treatment over [her] or offer

evidence to demonstrate that [the defendant's] reasons for firing [her] were

pretextual.". *Ruifang*, WL 1189297 at 7.   Moreover, the *Ruifang* court found the

defendant's pleading standard requiring plaintiff allege the same "job standard

responsibilities, performed work substantially similar, or "exerted similar levels of

effort in performing their jobs," as "beyond what is required to survive a motion to

dismiss.". *Ruifang*, WL 1189297 at 11.  Appellees attempt something equal here.

10.  Appellees urge the Court to require Mr. Joyner to have pled co-workers titles,

job duties, experience and method of hire were the same as him.  Notwithstanding

Mr. Joyner has pled some of these facts,  arguments that employees are similarly

situated cannot be made until after the discovery closes.   See, *Castillo v. P & R*

*Enterprises, Inc*., 517 F. Supp. 2d. 440, 445 (D.D.C. 2007); *Hunter, et al. v. Sprint*

*Corp.,* 346 F.Supp.2d 113, 117 (D.D.C. 2004).  Appellees try to burden Mr. Joyner

with saddle bags that can and should be filled at the end of discovery.

11.  Appellees own argument demonstrates that Mr. Joyner pleading "on

information and belief"  to show coworkers were all hired by the same placement

firm bolsters Mr. Joyner's argument that requiring specific facts to show coworkers

were similarly situated is premature at the pleading stage.  AB, p. 27.

12.  For Mr. Joyner to know information Appellees seek would be tantamount to

requiring every employee on their first day of employment become an investigator

and start gathering facts in case this information is needed for a lawsuit sometime

in the future (e.g., comparative qualifications of attorneys, knowledge of workstreams Mr. Joyner was not assigned to, and hire dates of all contract attorneys).  Few plaintiff's would reach this pleading standard; Appellees concerns are addressed by motion for summary judgment.[1]

13.  The Court's review is to determine whether Mr. Joyner plausibly alleged MoFo's failure to assign him to a workstream upon starting the Sprint T-Mobile "project" unlike other white contract attorneys who were also hired by Hire Counsel shows an inference of discrimination because of his race.  As argued in his Brief, facts and inferences drawn from his TAC show that Mr. Joyner has sufficiently met this burden and the District Court's decision should be reversed.

ARGUMENT – HIRE COUNSEL

12.  Next, Appellees argue Hire Counsel denying Mr. Joyner from working remotely for three days when previously authorizing remote work for Co-Worker 1 for a longer period of time was not an adverse event and - even if it was - Mr. Joyner did not allege any facts to plausibly infer Hire Counsel was "motivated by discriminatory intent.".  AB, p. 31.  Appellees side-step the Court's concession "post-*Chambers*" that Hire Counsel's failure to authorize him to work remotely was in fact an adverse employment action.  ECF No. 56 at 12 ¶ 2.   Despite this, the Supreme Court of the United States' recent ruling in *Muldrow v. City of St.*

---

[1] Mr. Joyner's attempts to start discovery were denied while the District Court took close to two and a half years to render its decision.  ECF Nos. 39, 49, 55-56.

6

*Louis*, Missouri et al., 144 S. Ct. 967 (2024) removed the heightened "adverse event" standard Appellees rely making any related argument moot. The *Muldrow* court found §2000e–2(a)(1) does not require changes to the terms and conditions of employment to be significant or adverse only that the plaintiff must have been "worse off" from the alleged event but not "significantly so". *Muldrow*, 144 S. Ct at 977.

13. At bar, Mr. Joyner has alleged facts that Hire Counsel's denial caused him to run the risk of violating a court order and therefore put him in a *worse* position than had Hire Counsel granted his request and kept Mr. Joyner out of harm's way. ECF Nos. 31, ¶57; 39, ¶27; Sealed Appellant Appendix Vol II, p. 35 (District Court stating Temporary Protect Order (TPO) extinguished). Additionally, because Mr. Joyner was not able to come in the office until after the TPO was extinguished, not being able to work remotely prohibited him from earning compensation and left him in a worse position than had his request been approved similar to Hire Counsel approving Co-Workers 1's request. ECF No. 39, ¶27. Whether pre or post *Muldrow* Mr. Joyner has shown that Hire Counsel altered the terms and conditions of his employment when his supervisor Defendant Ayala denied his request to work remotely.

14. In his Brief Mr. Joyner thoroughly addressed Appellees final argument that he did not allege any facts to plausibly infer Hire Counsel was motivated by discriminatory when it denied his request and will not waste the Court's time

addressing factual inaccuracies made by Appellees in an attempt to malign his argument.  Brief,  ¶¶ 31-37.  With that said, arguments put forth in paras 8, 9 and 11 *supra* are equally applicable here.  Mr. Joyner has pled a prima facie case of discrimination against Hire Counsel and the District Court's decision should be overturned.

B.  PLAINTIFF'S § 1981 AND TITLE VII HOSTILE ENVIRONMENT CLAIMS

ARGUMENT – MOFO

15.   Appellees argue:  Plaintiff failed to allege facts showing that he was subject to any coherent hostile environment, as opposed to a series of disconnected statements by various co-workers. Plaintiff failed to allege facts showing that most of the statements were racial. Plaintiff failed to allege facts showing that the conduct about which he complains was severe or pervasive enough to have affected the conditions of his employment. And Plaintiff failed to show that any liability for the statements of various co-workers could be imputed to any Defendant.  AB, p. 17. Mr. Joyner will address each of Appellees' arguments in turn.

1. PLAINTIFF FAILED TO PLEAD FACTS SHOWING THAT MORRISON IS PLAUSIBLY LIABLE FOR A HOSTILE WORK ENVIRONMENT.

16.   Appellees argue Mr. Joyner's allegations raised in his TAC, RMTD, and repeated in his Brief does not show plausible liability but rather "a hodgepodge of disconnected acts by a variety of persons".  AB, p. 29.  Before addressing this specific argument Mr. Joyner takes issue with Appellees selective reading of facts

8

pled in his TAC, RMTD, and Brief.

17.    First, Appellees recitation of facts pled by Mr. Joyner omits key facts the Court must consider in determining whether Appellant has pled a prima facie case for a hostile work environment claim.  In his TAC, Mr. Joyner states that when he reported Co-Worker 1's harassing behavior to both Defendant(s) Harris and Nolen, Defendant Nolen segregated and marginalized Appellant by telling him not to be where Co-Worker 1 was present.   ECF No. 31, ¶¶32-36.  Moreover, MoFo went to an even greater extreme when it over the objections of another female co-worker ("Co-Worker 2"), removed this co-worker from Mr. Joyner's work area.  As pled, this direct action by MoFo cast Mr. Joyner as a predator of women to his colleagues and the firm as a whole.  ECF No. 31, ¶34; Brief, ¶46.

18.    Additionally, given Co-Worker 1's direct statements showed she viewed Mr. Joyner as a wild animal who was sexually attracted to her because she was a white woman who he could not resist, it is more than likely -not merely plausible – the actions taken by Defendant Nolen were motivated by a belief in Co-Worker's 1's allegations that were clearly motivated by racial and sexual animus towards Mr. Joyner.  ECF No. 31, ¶32, fn. 6, ¶35, fn. 7; Unsealed Appellant Appendix Vol II, Exhibit 2  pp. 41-42; Sealed Appellant Appendix Vol II, District of Columbia Superior Court Transcripts pp. 29-30.  The Court must take these facts into account when determining whether Mr. Joyner has pled a prima facie claim against MoFo for creating or failing to prevent a hostile work environment.

19.   In addition to the Appellees omitting key facts, they contort the facts in an attempt to mislead the Court from Appellees wrong doing.  Specifically, Appellees change the reason for Co-Worker's 1's firing from creating political charts during business hours which is prohibited, to someone who was terminated for making false "racially-motivated accusations.".  AB, p. 40; Brief, ¶52, fn. 7.  As argued, MoFo, nor Hire Counsel, did anything to eliminate the hostile work environment rather they both stoked the flames higher. The Court must ignore Appellees attempts to change the facts Mr. Joyner has pled.

20.   To Appellees specific argument that Mr. Joyner's claim is a " hodgepodge of disconnected acts", Appellant directs the Court to arguments put forth in his Brief that clearly show that from the very beginning of his employment to his very last day at MoFo he was subjected to harassing behavior that under *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) cannot be characterized as disconnected or lacking severity or perverseness. Brief, ¶¶ 46-50.

21.   Moreover, Appellees omission that Mr. Joyner pled he was segregated and marginalized and cast as a predator by Defendant Nolen artfully obfuscates the continuous hostile work environment that extended from Defendant Nolen's direction, through removal of female Co-Worker 2, and, at least until – arguably a cloud was over Mr. Joyner until his unlawful firing -  Co-Worker 1 was fired and MoFo's direction became moot.

2. PLAINTIFF HAS FAILED TO ALLEGE ANY PLAUSIBLE RACIAL COMPONENT OR MOTIVATION.

22.   Appellees' argument is flatly false and ignores, omits, or otherwise attempts to change the facts as pled.   For the reasons already argued *supra*, all actions of Co-Worker 1 were racially or sexually motivated - Appellee already admitted as much.  AB, p. 40.  As argued, Defendant Nolen's direction and MoFo removing Co-Worker 2 from Mr. Joyner's workspace was based on a belief in Co-Worker 1's racial and sexual animus towards Appellant.  Finally, Mr. Joyner pleading that an African-American secretary pulled him aside and asked how he could stand to be in the conference room with white men who spew racial discord, demonstrates an objective not subjective racial component to Mr. Joyner's claim.  ECF No.  31, ¶28.

23.   Mr. Joyner's remaining hostile work environment claim against MoFo relate to Defendant Harris' actions that in totality clearly have an objective racial element.  Appellees attempt to use *Hogan v. Hayden*, 406 F. Supp. 3d 32, 54 (D.D.C. 2019) as a legal authority for their position.  However, Mr. Joyner's claims are anything but "facially-neutral" like the facts in Hogan.  AB, p. 40.

24.   First, in *Hogan* plaintiff's hostile work environment claim failed because the Court found her claims of i) failure to return collegiality, ii) not showing respect for her position, and iii) and not looking at her performance reviews or position description as "subjective harm … insufficient to support a hostile work environment claim because the test for severity and pervasiveness is an objective

11

one.".  *Hogan,* 406 F. Supp at 54 (quoting, *Faragher*, the *Hogan* court found these allegations, "ordinary tribulations of the workplace".).

25.    Second, in the totality of the circumstances, allegations of Defendant Harris a) making comments about pre-paid subscribers being low class, given that training documents showed that a large percentage of prepaid subscribers were African-American and Mr. Joyner had told Defendant Harris he was prepaid subscriber, b) failing to stop or even investigate reported harassing conduct of white male coworkers, and c) after receiving supporting documentation from Mr. Joyner regarding  coworkers behavior and doing nothing, stating directly to Mr. Joyner, "We don't want you down there!", it is apparent these are wholly different than *Hogan's* allegations and are far from  factually neutral or otherwise ordinary workplace tribulations.  ECF No. 31, ¶¶ 19-21, 28, 29; Sealed Appellant Appendix, p. 12.

26.  Lastly, as to Appellees final arguments regarding Mr. Joyner claim lacking severity, pervasiveness, or imputing liability to MoFo, Appellant's Brief shows Appellees' arguments lack merit and he will not waste the Court's time with repeated arguments.  Brief, ¶¶38-53.  Mr. Joyner has pled a prima facie case for a hostile work environment claim against MoFo and the District Court's decision should be overturned.

ARGUMENT – HIRE COUNSEL

27.    Appellees argue Mr. Joyner's hostile environment claim against Hire Counsel

fails because "Plaintiff failed to plead facts showing a racially hostile environment and, even if he had shown such an environment, he failed to plead facts showing Hire Counsel was negligently responsible for it.".  AB, p. 49.

28.   In Mr. Joyner's TAC he pleads Hire Counsel was responsible for creating, maintaining, and failing to remedy a hostile work environment demonstrated by failing to investigate Mr. Joyner's complaint regarding white male coworkers racially harassing him, failing to investigate his complaint regarding Co-Worker 1's racial harassment towards him, prohibiting him from working remotely when Hire Counsel had granted Co-Worker 1 permission to work for a longer period remotely, and finally threatening to terminate him for bringing his request for remote work to his co-employer, MoFo, before bringing the request to Hire Counsel. ECF No. 31 ¶¶ 51-60.

29.   As a threshold matter, the Court in *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512 (2002) held:

> "An employment discrimination complaint need not contain specific facts establishing a prima facie case under the *McDonnell Douglas* framework, but instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief,". Fed. Rule Civ. Proc. 8(a)(2). "Moreover, the precise requirements of the prima facie case can vary with the context and were "never intended to be rigid, mechanized, or ritualistic." (Quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L.Ed.2d 957). "It may be difficult to define the precise formulation of the required prima facie case in a particular case before ***discovery*** has unearthed relevant facts and evidence. Consequently, the prima facie

13

case should not be transposed into a rigid pleading standard for discrimination cases."

*(emphasis added)*

30.  Appellees' argument of no racial component lacks merit.   All incidents and complaints regarding white co-workers and Defendant Ayala are covered in racial animus directed at Mr. Joyner because he is an African-American male.  The one incident that does not smack of racial animus is Hire Counsel's denying Mr. Joyner from working remotely for three days when Hire Counsel granted Co-Worker 1's request for two weeks remote work.   In Appellant's TAC he cites *Townsend v. U.S.,* 236 F. Supp 3d 280, 309 (D.D.C 2017) as legal authority that an inference of discrimination may be drawn where an "employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances.".  *Id*.

31. Appellant has already addressed why the "factual circumstances" between Co-Worker 1 and himself were similar such that an inference of discrimination can be drawn from Hire Counsel's conduct.  Brief, ¶¶20-28.  However, Appellees' argument Co-Worker 1 "appears to have been working remotely for reasons related to her two lawsuits *against Plaintiff* filed in the Domestic Violence Unit of the Superior Court of the District of Columbia" strengthens Mr. Joyner's argument that factual circumstances were similar. AB, p. 32, 48.   As cited in his TAC and in his RMTD, Mr. Joyner pled:

14

Plaintiff did not request to work remotely for mere convenience or some other fanciful reason. Plaintiff had been subjected to false and outrageous accusations by Co-Worker 1, to the point where Co-Worker 1 was filing Domestic Violence charges against him when she did not have standing or the court could not exercise subject-matter jurisdiction on the parties because they had no relationship under the appropriate statute. Despite this, Co-Worker 1 persisted. At the time Plaintiff made his request, Plaintiff was truly fearful that Co-Worker 1 would try some malicious stunt to entrap him into violating a court order requiring him to remain at least 100 yards away from Co-Worker 1 prior to their trial. Accordingly, Plaintiff explained this to Hire Counsel and his request was denied.

TAC, 57; RMTD, ¶27.

32.   These pleadings and Appellees own argument demonstrate that Hire Counsel granted Co-Worker 1's request to work for two weeks remotely because of a trial in D.C. Superior Court and in the same breath denied Mr. Joyner's request for less time for the purpose of participating in the same trial.  Moreover, Hire Counsel compounded the difference in treatment by threatening to terminate Mr. Joyner because of his request. Any argument Defendant Ayala's reason for denying Mr. Joyner's request to work remotely was because he did not follow proper procedure is a red-herring and not something for the Court to consider. See, *Webster v. U.S. Department of Energy*, 267 F.Supp.3d 246, 255, 256 (2017) (Court quoting U.S. Supreme Court decisions only requiring plaintiff show an inference of discrimination at the pleading stage to make out a prima facie case for employment discrimination and then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the" adverse action" that plaintiff can still refute by introducing evidence showing "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.".

15

(citations omitted) ).  *Id*.

33.    Under *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88 (1998) and *Webster*, Appellant has pled a prima facie case for a hostile work environment claim against Hire Counsel.  Brief, ¶¶44-50.   Once a plaintiff has established a hostile work environment exists, he or she must also show that "[the] employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action.". *Goode v. Billington*, 932 F. Supp, 75, 87 (D.D.C. 2013).

34.    Mr. Joyner reported the conduct of the white male coworker's and Co-Worker 1's racist behavior to Defendant Ayala and she responded by denying Mr. Joyner's remote work request for discriminatory reasons and threatened termination; Hire Counsel certainly knew about and failed to correct conduct

35.    Defendant Ayala's supervisor status is not in question therefore her conduct imputes liability directly to Hire Counsel.  Mr. Joyner has pled a prima facie case for a hostile work environment claim against Hire Counsel and the District Court's decision should be overturned.

*C. PLAINTIFF'S CLAIM FOR WRONGFUL DISCHARGE AGAINST PUBLIC POLICY.*

36.    Appellees argue:  Plaintiff failed to identify any statute or regulation that specifically reflects a public policy prohibiting the activity he complained about, much less that there is a "close fit" between the policy and his allegedly wrongful

termination. The only facts Plaintiff alleges are that he reported a disclosure of "competitively sensitive information." Plaintiff identified no statute or regulation that prohibits such disclosures, and thus does not bring himself within the "very narrow" ambit of a viable wrongful discharge cause of action.  AB, p. 17-18.

37.     Appellees' argument fails because it lacks a foundation.   Appellees begin their argument with, "To state a claim, the wrongful discharge plaintiff must show three things.  First, the plaintiff must identify "the existence of specific laws or regulations that clearly reflect a policy prohibiting the activity about which the employee complained." *Herron*, 861 F.3d at 170.".   AB, p. 51.   Appellees again attempt to mislead this court this time by altering cited case law.

38.     The *Herron* court, quoting the <u>summary judgment opinion</u> of the lower court, stated in full:

> "[A]ny judicially recognized public policy exception to the at-will doctrine" must be " 'carefully tethered' to rights officially recognized in statutes or regulations ...." *Carl* , 702 A.2d at 164 (Terry, J., concurring). For this reason, one "common denominator" can be found in all of the cases applying the public policy exception: ***"the existence of specific laws or regulations that clearly reflect a policy prohibiting the activity about which the employee complained ...."*** *Leyden v. Am. Accreditation Healthcare Comm'n* , 83 F.Supp.3d 241, 249 (D.D.C. 2015) (collecting cases); *see also Freas v. Archer Servs., Inc.* , 716 A.2d 998, 999–1003 (D.C. 1998) (noting that plaintiff alleged facts demonstrating that he was discharged "in violation of a mandate explicitly set forth in [D.C.] law").
>
> *Herron*, 861 F.3d at 170.  (**Emphasis added**)

17

39.    The *Herron* court did not hold that in order to survive a motion to dismiss a

plaintiff must have pled the existence of some law or regulation clearly reflecting

a policy prohibiting the activity the employee complained about.  If it had it would

be contrary to binding case law.   The District Court in *Omwenga v. Nations*

*Found*, No. 15-cv-786 (TSC), 2020 WL 5798428, at 4,5 (D.D.C. Sept. 29, 2020),

cited *McIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223,

228, 229 (D.D.C. 2005) discussed the heightened review standard of summary

judgment motions requiring specific statute citations versus the lesser review

standard required for a motion to dismiss for failure to state a claim.  In *McIntosh*

plaintiff did not need to cite a statute or regulation he believed embodied the

public policy mandate in his complaint and the court dismissed defendant's

motion to dismiss as to that count.  *McIntosh*, 355 F. Supp. 2d at 229.

Accordingly, Appellees' arguments are moot.[2]

40.    Moreover, now Appellees motivations to eliminate the Court's review of Mr.

Joyner's unredacted TAC and RMTD becomes apparent.   Appellees' argument

---

[2] The fallacy of Appellees requirement for Appellant to have named a specific
statute that is a "close fit" to the perceived violation is apparent when juxtaposed
with the Fed R. Civ. P. Rule 12(b)(6) pleading standard of plausibility; (i.e.,
detailed factual allegations are not necessary to withstand "a Rule 12(b)(6) motion
to dismiss, *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, the complaint "must
contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
***plausible*** on its face.'"" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (**Emphasis added**).
Appellees' argument is on par with a summary judgment standard but has no
purchase when analyzed under the lower Fed. R. Civ. P. Rule 12(b)(6) standard.

that Appellant failed to plead a "close fit" under *Carl* may seem colorable because the label "competitively sensitive" appears benign and innocuous. However, this changes drastically when the Court reads the actual alleged disclosures in Mr. Joyner's unredacted TAC and RMTD. Sealed Appellant Appendix, pp. 32-33; Sealed Appellant Appendix Vol II, RMTD, pp,18-19,21-22. As discussed *supra*, the Court must include the District Court entire record in its review which includes Mr. Joyner's unredacted TAC and RMTD.

41.    That withstanding, as cited in his Brief, Mr. Joyner has pled specific laws or regulations that are a close fit to the disclosure of competitively sensitive information during the merger between Sprint and T-Mobile.

A.  Hart-Scott-Rodino Antitrust Improvement Act of 1976

42.    As cited in his unredacted TAC, TAC, RMTD, and Brief Mr. Joyner pled the Hart-Scott-Rodino Antitrust Improvement Act of 1976, 15 U.S.C. §18a ("HSR") is a specific law clearly reflecting a policy prohibiting sharing of competitively sensitive information between merger parties prior to deal close.   Appellees disagree.  AB, p. 54.

43.    In his Brief Mr. Joyner provides Competitive Impact Statements *United States of America v. Computer Associates Intl. Inc., et al*., Civil Action No. 01 CV 02062 (D.D.C. April 2002) and *United States of America v. Gemstar-TV Guide Intl., Inc.*, et al., Civil Action No. 03 CV 000198 (D.D.C. March 2003); Administrative Complaints *United States of America v. Insilco Corp*., Docket No.

C-3783 (FTC Jan. 1998) and *United States of America v. Bosley, Inc. et al*., Docket No. C-4404 (FTC May 2013) (collectively, "Competitively Sensitive Authority"), all explicitly show exchanges of competitively sensitive information between competitors are direct violations of the HSR Act or Federal Trade Commission Act, 15 U.S.C. §§ 41-58, and therefore, unlike the District Court opinion, are not "uprooted from any statute." or as Appellees posit, "lacks the "statutory anchor" required for a public policy wrongful discharge claim.". ECF No. 56, p. 24; AB, p. 54.

44.    Moreover, Appellees' arguments this court is prohibited from reviewing Competitively Sensitive Authority provided in Mr. Joyner's Unsealed Appellant Appendix is wrong.   Appellees reliance on *Lail v. United States Government,* 771 F. Supp. 2d 49, 59 (D.D.C. 2011) language: "The Court generally may not rely on facts" outside" the complaint in deciding a motion for dismissal pursuant to Rule 12(b)(6), but it may consider, among other things, "matters of public record." is misplaced because "The Court" refers to the district court not an appellate court and excludes "facts" outside of a complaint not case law or other regulations. With that said, Mr. Joyner did in fact cite cases in his TAC and RMTD that are included within the Competitively Sensitive Authority provided to the Court.  ECF No. 31, ¶ 99 fn. 17-18.  Accordingly, District Court's decision finding Appellant failed to state a claim must be overturned.

B.  Code of the District of Columbia

45.    As cited in his unredacted TAC, TAC, RMTD, and Brief Mr. Joyner pled Code of the District of Columbia §§ 28-450l(a) &(b), 28-4502, 28-4503, 28-4506, and 28-4508 are specific laws that clearly reflect a policy prohibiting sharing of competitively sensitive information between merger parties prior to deal close. Appellees disagree.  AB, p. 56.

17.    Appellees are correct that Code of District of Columbia "§§28-2501 and 28-2502" are not close fits to the prohibited conduct alleged because they relate to bond obligations not restraints of trade or monopolistic practices.  AB, p. 56.   In his Brief Mr. Joyner provides a thorough analysis demonstrating that Code of District of Columbia §28-4502 is a statute that is a close fit to the alleged prohibited conduct and will not waste the Court's time with repeated arguments Appellees fail to address.  Brief, ¶¶58-59.  The District Court's decision finding Appellant failed to state a claim must be overturned.

C.  District of Columbia Bar Rules of Professional Conduct

46.    As cited in his unredacted TAC, TAC, RMTD, and Brief Mr. Joyner pled District of Columbia Bar Rules of Professional Conduct Rules 8.3 and 8.4 are specific laws or regulations that clearly reflect a policy prohibiting sharing of competitively sensitive information between merger parties prior to deal close. Appellees disagree.  AB, pp. 57-59.

47.    Appellees' argument can be boiled down to the District of Columbia Bar

Rules of Professional Conduct not being laws or regulations or alternatively if they

are statutes or laws, "nothing in them announces a clear policy against "disclosure

of competitively sensitive information" to a potential merger partner.".  AB, p. 58.

The first prong of Appellees' argument fails to achieve its objective because it

consumes itself.  Appellees rely on *Herron's* citing *Rosella v. Long Rap, Inc*.,

121A.3d 775, 778 (D.C. 2015) language:  "By tying new causes of action to

statutory and constitutional provisions, we would refrain from defining ***'nebulous'***

concepts of public policy, and leave such definitions to the legislature, which is in

a far better position than a court to make policy decisions on behalf of the

citizenry".  *Id*. (**Emphasis added**)

48.    The *Rosella* court is clearly concerned with wrongful termination against

public policy claims being tied to public policy concerns that are not defined.

That is not the case here.   District of Columbia Bar Rules of Professional Conduct

are anything but nebulous and were clearly defined by a judicial body that is in a

position to make policy decisions on behalf of its citizenry, District of Columbia

Bar members.

49.    The public exception to the "at-will" doctrine is based on case law and is not

rigidly defined in federal or state statute.   In its opinion the District Court cites

*Carl v. Children's Hosp.*, 702 A.2d 159, 161 (D.C. 1997) to purportedly hold:

22

> To state a claim for wrongful discharge in violation of public policy, the plaintiff must point to "some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution, . . . [and] a 'close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination.'" *Id.* (quoting *Davis v. Cmty. Alts. of Wash., D.C., Inc.*, 74 A.3d 707, 709–10 (D.C. 2013)).

> ECF No. 56, p. 22.

50.    However, this cite is wrong for two reasons.   First, it incorrectly cites to *Carl* instead of where the language comes from, *Ruifang Hu v. K4 Sols.*,  Civil Action No. 18-cv-1240 (TSC) 03-12-2020 at 5.  Second, it imports or mandates a pleading standard from *Carl* that public policy claims must come from a statute, municipal regulation, or Constitution.  That is not a holding of *Carl*.

51.    The relevant language in *Carl* is:

> Like the court in *Gantt,* this court in the past has sought to make sure that any judicially recognized public policy exception to the at-will doctrine is "carefully tethered"[6] to rights officially recognized in statutes or regulations by the elected representatives of the people—the "public" whose policy we are talking about.
> Future requests to recognize such exceptions, therefore, should be addressed only on a case-by-case basis. This court should consider seriously only those arguments that reflect a clear mandate of public policy—*i.e.,* those that make a clear showing, based on some identifiable policy that has been "officially declared"[7] in a statute or municipal regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination.

> *Carl*, 702 A.2d  at 164.

23

52.  The District Court language, "Since *Carl* expanded the wrongful-discharge tort, courts have grappled with its outer bounds. The collective result is hardly a beacon of clarity." correctly points out the variance between courts to recognize this exception to the "at will" doctrine. ECF No. 56, p. 22.  However, what is clear from *Carl's* language is that the Court suggests courts consider cases limited to statutes, municipal regulations, or the Constitution.  However, these are not pleading standards and certainly not a mandate plaintiff's must follow.

53.   At bottom, *Carl*, *Herron*, and *Rosella* all stand for this exception to be used when there is a "officially declared" policy that is not nebulous and is a close fit to the prohibited conduct.  This is completely in line with *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 883-886 (D.C.1998)  (Court would find a wrongful discharge in violation of public policy claim where a former law firm associate reported serious dishonest conduct to her law firm supervisor and was fired *solely or primarily* because of reporting the violation.)   This - along with *Omwenga's* unambiguous language not requiring citation of a specific statute to support the public policy allegedly – shows that Mr. Joyner has successfully pled a claim for wrongful discharge against public policy and the District Court's decision should be overturned.

*D. DISTRICT COURT'S DISMISSAL OF PLAINTIFF'S CLAIMS  WITH PREJUDICE*

54.  Finally, Appellees ask the Court to uphold the District Court dismissing all of

24

Mr. Joyner's claims with prejudice. Citing *Firestone v. Firestone*, 76 F.3d 1205, 1209 (1996), Appellees argue Mr. Joyner should be denied the right to refile his complaint because he failed to cure deficiencies by previous amendments . SA, p. 64. The Court should not be swayed by the Appellees' falsehoods and crippled view of applicable law.

55. First, Appellees' premise that Mr. Joyner failed to cure defects by previous amendment is a conclusion that is yet to be determined; Appellant believes the Court will find his TAC alleges prima facie cases for all cause of actions thereby invalidating Appellees' premise. Second, Appellees' citation of *Firestone* is in adequate. As cited in Mr. Joyner's Brief, the *Firestone* court stated, "A dismissal *with prejudice* is warranted only when a trial court "determines that 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."". *Firestone*, 76 F.3d at 1209. Brief, ¶70. Again, Mr. Joyner asserts his TAC and inferences drawn from within do carry the day; however, certainly arguments put forward in Mr. Joyner's Brief and this Reply demonstrate any alleged defect will be cured through amendment.

25

# III.    CONCLUSION

56.  For the forgoing reasons this Court should reverse the District Court's final order finding the Appellant failed to state a claim for which relief can be granted for (i) disparate treatment; (ii) hostile work environment; and (iii) wrongful termination against public policy.  Alternatively, the Court should remand the District Court's order back to the District Court with instructions allowing Mr. Joyner leave to amend any deficiencies the Court may have determined.

Dated: May 3, 2024                    Respectfully submitted,

By: /s/ Junius Joyner, III

Appellant, *pro se*
8020 Voyager Parkway
Colorado Springs, CO 80920
424.352.6193
juniusj3@yahoo.com

26

## CERTIFICATE OF COMPLIANCE

1.  This reply brief complies with Fed. R. App. P. Rule 32(a)(7)(B)(ii) word limitation.  Excluding parts of the document exempted by Fed R. App. P. Rule 32 (f), the reply brief contains 6,138 words.

2. This reply brief complies with the typeface and type style requirements of Fed. R. App. P. Rule(s) 32(a)(5) and 32(a)(6), it has been prepared using proportionally spaced Times New Roman 14-point type style.


By: /s/ Junius Joyner, III

Appellant, *pro se*
8020 Voyager Parkway
Colorado Springs, CO 80920
424.352.6193
juniusj3@yahoo.com

**CERTIFICATE OF SERVICE**


The undersigned hereby certifies that a copy of the foregoing REPLY BRIEF FOR

APPELLANT, JUNIUS J. JOYNER, III was filed electronically this 3rd day of

May 2024.  Notice of this filing will be sent to Appellees' counsel, OGLETREE &

DEAKINS, David L. Schenberg, 7700 Bonhomme Avenue, Suite 650, St. Louis,

MO 63105, via operation of the Court's electronic filing system.


                            By: /s/ Junius Joyner, III

                            Junius Joyner, III
                            Appellant, *pro se*
                            8020 Voyager Parkway
                            Colorado Springs, CO 80920
                            juniusj3@yahoo.com
                            424.352.6193